(79 South. 479)

WHITE SWAN LAUNDRY CO. v. WEHRHAN. (6 Div. 753.)

(Supreme Court of Alabama. May 16, 1918. Rehearing Denied June 20, 1918.)

1. MUNICIPAL CORPORATIONS ⚙️705(1)—USE OF STREETS—MOTOR VEHICLES.

The operators of motor vehicles, as well as pedestrians, on the streets of a city, must recognize the rights of others and take reasonable care and precaution to avoid inflicting wrong and injury.

2. MUNICIPAL CORPORATIONS ⚙️705(1)—MOTOR VEHICLES—OPERATION.

What is the exercise of reasonable care by an operator of a motor vehicle on a city street depends upon the circumstances of the particular case, for what may be deemed reasonable and prudent in one case may under different circumstances be gross negligence.

3. NEGLIGENCE ⚙️4 — "ORDINARY CARE" — "REASONABLE PRUDENCE."

The terms "ordinary care" and "reasonable prudence," as applied to the conduct and the affairs of men, have only a relative significance, depending upon the special circumstances of the case, and defy arbitrary definition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Ordinary Care; Reasonable Prudence.]

4. NEGLIGENCE ⚙️136(9)—QUESTIONS OF LAW AND FACT.

The question of negligence becomes one of law for the court only when the facts are such that all reasonable men must draw the same conclusion from them, being otherwise for the jury.

5. NEGLIGENCE ⚙️122(6) — CONTRIBUTORY NEGLIGENCE—INFANTS.

There is a prima facie presumption that a child 11 years of age, injured while crossing a street, exercised reasonable care.

6. MUNICIPAL CORPORATIONS ⚙️706(8)—MOTOR VEHICLES—NEGLIGENCE.

In an action for personal injuries, a requested charge, that there was no duty upon the driver of defendant's automobile to give a warning of approach unless the danger to plaintiff was apparent or should have been apparent to a man of ordinarily reasonable prudence under like circumstances, was properly refused because the duty should not be measured by the "danger to plaintiff"; consciousness of danger to "some one" being the proper measure.

7. MUNICIPAL CORPORATIONS ⚙️706(4) — MOTOR VEHICLES — SIGNALS AND WARNINGS — EVIDENCE.

Whether or not a motorcar was lighted at the time it ran down plaintiff was competent evidence on the question of the reasonable sufficiency of signals and warnings at nightfall.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Suit by Ena Wehrhan against the White Swan Laundry Company. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals of Alabama under section 6, Act April 18, 1911 (Laws 1911, p. 449). Affirmed.

---

⚙️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] 200 Ala. 410.

Percy, Benners & Burr and D. K. Mc-Kamy, all of Birmingham, for appellant. W. J. Whitaker and Frank Dominick, both of Birmingham, for appellee.

THOMAS, J.   This suit was for personal injuries to a child 11 years of age, caused by collision with defendant's motor truck while plaintiff was crossing a public thoroughfare in the city of Birmingham.

By the application of old legal principles to the frequent use of public thoroughfares by motor vehicles, certain regulatory requirements are recognized as attaching and giving rise to mutual duties between travelers on such thoroughfares, the observance of which duties is important to conserve the public safety.   The courts applying these rules have announced:

[1] 1. That, while public highways are open to the proper use of automobiles and other motor vehicles, the law exacts of operators of such machines therein a prudent and careful regard for the rights of others who are or may be lawfully using the public way; and the operator is liable for the consequences of negligence, in the operation of any such motor vehicle, to the injury of another traveler who is in the proper use and enjoyment of the common highway. Barbour v. Shebor, 177 Ala. 304, 58 South. 276; McCray v. Sharpe, 188 Ala. 375, 66 South. 441; Reaves v. Maybank, 193 Ala. 614, 69 South. 137; B. R. L. & P. Co. v. Smyer, 181 Ala. 121, 61 South. 354, 47 L. R. A. (N. S.) 597, Ann. Cas. 1915C, 863; Christy v. Elliott, 216 Ill. 31, 74 N. E. 1034, 1 L. R. A. (N. S.) 215, 108 Am. St. Rep. 196, 3 Ann. Cas. 487; 28 Cyc. pp. 25, 26; 2 R. C. L., "Automobiles," p. 1182 et seq.; Huddy on Automobiles, §§ 45, 46.

2. That degree of care to be observed by such operators, with respect to the rights of others lawfully using a public way, is the care a reasonably prudent man would exercise and observe, under like circumstances. That is, the operators of such vehicles, as well as pedestrians on the highway, must recognize the rights of others, and take reasonable care and precaution to avoid inflicting wrong and injury. Barbour v. Shebor, supra; McCray v. Sharpe, supra; Reaves v. Maybank, supra; A. C. G. & A. Ry. Co. v. Lumpkin, 195 Ala. 290, 70 South. 162; B. R. L. & P. Co. v. Williams, 158 Ala. 381, 48 South. 93; Cecchi v. Lindsay, 1 Boyce (24 Del.) 185, 75 Atl. 376; 28 Cyc. 27, 28; 2 R. C. L. p. 1182 et seq.; Berry Law of Automobiles, § 124, p. 113; Id., § 171, p. 166; Huddy on Automobiles, §§ 46, 47.

[2] 3. What is the exercise of reasonable care by an operator of a motor vehicle on public highways depends upon the circumstances of the particular case, as bearing upon the conduct and the affairs of men; for what may be deemed reasonable and prudent in one case may, under different circumstances and surroundings, be gross negligence.

Brown & Flowers v. Central of Georgia Ry. Co., 197 Ala. 71, 72 South. 366; McCray v. Sharpe, supra; Perkins v. Galloway, 194 Ala. 265, 69 South. 875, L. R. A. 1916E, 1190; Reaves v. Maybank, supra; Hood & Wheeler Fur. Co. v. Royal, 200 Ala. 607, 76 South. 965; Grand Trunk Railway Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485.

[3, 4] 4. The terms "ordinary care" and "reasonable prudence," as applied to the conduct and the affairs of·men, are declared to have only a relative significance, depending upon the special circumstances and surroundings of the particular case, and to defy arbitrary definition.   When a given state of facts is such that reasonable men may differ as to whether or not negligence intervened, as whether or not ordinary care and reasonable prudence characterized the actions and conduct of an actor, the determination of such question becomes a matter for the jury.   Grand Trunk Ry. Co. v. Ives, supra; B. & O. R. Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186; Warner v. Baltimore & Ohio R. Co., 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491; Penn. R. Co. v. White, 88 Pa. 327, 333; 12 Rose's Notes, U. S. Rep., 171, 176.

5. "The question of negligence is one of law for the court only when the facts are such that all reasonable men must draw the same conclusion from them."   Gardner v. Mich. Cent. R. R., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; Railway Co. v. Ives, supra; Railway Co. v. Cox, 145 U. S. 593, 606, 12 Sup. Ct. 905, 36 L. Ed. 829; Tex. & Pac. Ry. Co. v. Gentry, supra; Chicago, St. P., M. & O. Ry. Co. v. Nelson, 226 Fed. 708, 141 C. C. A. 464; Kreigh v. Westinghouse Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; Delk v. St. L. & S. F. Ry. Co., 220 U. S. 580, 31 Sup. Ct. 617, 55 L. Ed. 590; Railroad Co. v. Miller, 25 Mich. 274; Emens .v. Lehigh Valley Co. (D. C.) 223 Fed. 810.

Mr. Justice Lamar's observations touching "reasonable prudence" have been often approved by other jurisdictions, state and federal; and were quoted approvingly by this court, as follows, in the case of Reaves v. Maybank, supra (193 Ala. 618, 619, 69 South. 137, 138):

"There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances.   The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence.   The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court.   It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as

would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them that the question of negligence is ever considered as one of law for the court." Railroad Co. v. Pollard, 22 Wall. 341, 22 L. Ed. 877; Delaware, etc., Railroad v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Thompson v. Flint, etc., Railway, 57 Mich. 300, 23 N. W. 820; Lake Shore, etc., Railway v. Miller, 25 Mich. 274; Grand Trunk Ry. Co. v. Ives, supra, 144 U. S. 417, 12 Sup. Ct. 679, 36 L. Ed. 485.

[5] In Huddy on Automobiles (1916, .4th Ed.) p. 144 et seq., there is this discussion of the presence of children in the street:

"In determining whether or not a plaintiff is guilty of contributory negligence, the conduct of children should not be judged by the same rules which govern that of adults, and, while it is their duty to exercise ordinary care to avoid the injuries of which they complain, ordinary care for them is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under like circumstances. It is a matter of common knowledge that, especially in cities of any considerable size, children use the streets as a playground, not confining themselves to the sidewalk, but occupying or at unexpected moments running upon or across the part of the thoroughfare used by vehicles. The same degree of intelligence and care to anticipate danger is not exacted from them as from adults. Children of immature age are not regarded as possessing the same mental capacity to understand and realize the dangers incident to the use of the public thoroughfares as are those whose minds the law regards as having matured. Of such use of the streets by children, motorists and users of other vehicles must be assumed to have knowledge, and where their presence can be observed a degree of care commensurate with the ordinary care emergencies presented in these instances must be exercised. The rate of speed is not necessarily determinative of the question. What would be reasonable care in one street would not be in another; even a much less rate might be deemed negligence on the part of the one operating the car."

In this connection, see Ratcliffe v. Speith, 95 Kan. 823, 149 Pac. 740; Savoy v. McLeod, 111 Me. 234, 88 Atl. 721, 48 L. R. A. (N. S.) 971; Haake v. Davis, 166 Mo. App. 249, 148 S. W. 450; Deputy v. Kimmell, 73 W. Va. 595, 80 S. E. 919, 1 L. R. A. (N. S.) 989, Ann. Cas. 1916E, 656.

Mr. Huddy cites Reaves v. Maybank, supra, as authority for the statement that, in an action to recover damages for an injury to or the death of a child, the questions of negligence and contributory negligence are for the jury. The justice said:

"In view of the circumstances known to the driver, Smith, and to the defendant, it was for the jury to decide whether the degree of care we have before defined was observed by those in charge of the car at a time when the conditions out of which danger to the child soon but later arose, whether the speed of the car was, under the circumstances, within the degree of care due from the operator or from the defendant to the child, whether the car's course in the road was charted as the requisite degree of care exacted, whether it was driven, with rapidity, so near to the child on the left side of the road, when it might have been, with safety, di-

rected further away in the highway, as to infract the dictates of ordinary care, the prudence the ordinarily prudent man would have observed under the same circumstances." 193 Ala. 624, 69 South. 140.

Of the locus in quo of an injury, as shedding light on the respective duties of the driver of the automobile and the child injured, Mr. Justice Sayre declared:

"At the place where defendants' automobile truck ran upon plaintiff, one side of the street had been rendered impassable by reason of improvements going on there. The other side was partially obstructed by a sand pile next to the curb. It resulted that vehicles moving along the street in either direction at that point were obliged to move over toward the center of the street and near, if not directly upon, one or the other of two tracks there laid and used by the street car company. In this situation the manner of the street car company's use of its tracks, its frequency, etc., may have been properly considered by the jury as shedding light upon the question as to what speed defendants' truck might, in the observance of due care, maintain at that point." Hood & Wheeler Fur. Co. v. Royal, 200 Ala. 607, 76 South. 965.

The capacity of children, as bearing on contributory negligence, has been the subject of frequent pronouncements by our court. In the Royal Case, supra, it was said that the plaintiff, who was about seven years of age, was "prima facie incapable of exercising judgment and discretion, and hence prima facie incapable of contributory negligence." Government St. R. Co. v. Hanlon, 53 Ala. 70; B. R. L. & P. Co. v. Landrum, 153 Ala. 192, 45 South. 198, 127 Am. St. Rep. 25; Central of Georgia v. Chambers, 183 Ala. 155, 62 South. 724.

The Chambers Case said:

"Children have the same rights in the highway as adults (Government St. R. Co. v. Hanlon, 53 Ala. 70) and prima facie judgment and discretion is not presumed of a child under fourteen years of age." B. & A. Ry. Co. v. Mattison, 166 Ala. 602, 52 South. 49.

In Landrum's Case, supra, it was declared that:

"It is not the ability to know or even appreciate danger which might make a child between seven and fourteen years old responsible for contributory negligence, but it must be a maturity and discretion beyond its years, which would lead it to take care."

The opinion in the Mattison Case, supra, discusses the subject as follows:

"There are ages so young (usually under seven) that there is a conclusive presumption of law, and hence evidence is not admissible to refute the presumption; while there are other ages, usually seven, after reaching which it becomes a prima facie presumption only, and may then be rebutted by evidence of unusual natural capacity, physical condition, training, habits of life, experience, surroundings, and the like. This prima facie presumption continues in its favor till it reaches another age, usually fourteen, after which the presumption changes, and the burden is then on the infant to show want of capacity or understanding."

On the authority of the Landrum Case, this rule is illustrated as follows:

"The evidence in this case shows that Benton Steadham, when he was injured by the automobile, was between ten and twelve years of age. * * * Every well-balanced child of eight, nine, or ten, or eleven years of age knows

that fire will burn, and that if he falls into the fire, or if his clothing catches on fire, he will not only be burned, but he also probably knows that his life will thereby be endangered. Such a child may not, however—and he is rebuttably presumed by the law not to—possess that maturity of discretion which dictates those precautions against the danger of fire that are conclusively presumed by the law to belong to normal children who are fourteen years of age. A child above seven and under fourteen years of age may know that, if he is struck by an automobile, he will probably be killed or suffer great bodily injury. He may know that, if he remains out of public thoroughfares and other places in which automobiles are wont to go, he will be in no danger from automobiles. He may, however, not possess that maturity of discretion which belongs to adults of ordinary prudence (and which normal children of fourteen years of age and above that age are conclusively presumed by law to possess), and for that reason may heedlessly play in the highways and *may heedlessly go across them without exercising such ordinary prudence.*" (Italics supplied.) Cedar Creek Co. v. Stedham, 187 Ala. 622, 629, 65 South. 984.

Charge B in effect attempted to exclude the defendant from liability unless its negligence proximately caused the injury, and was sufficiently covered by the oral charge of the court. Gen. Acts 1915, p. 815; Garner v. State, 200 Ala. 86, 75 South. 462; Reynolds v. State, 196 Ala. 586, 72 South. 20.

[6] Charge E, requested by defendant and refused, was as follows:

"E. I charge you that there was no duty upon the driver of the defendant's automobile to give a warning or signal of his approach unless you believe from the evidence that the danger to plaintiff was apparent to him, or should have been apparent to a man of ordinarily reasonable prudence under like circumstances."

Charge E was properly refused. It did not correctly instruct as to the duty of drivers of motor vehicles on public thoroughfares, in cities, as regards giving necessary warnings and signals of approach and passage. By that charge, the duty was sought to be measured by the "danger to plaintiff" that was apparent to defendant's driver, "or that should have been apparent to a man of ordinarily reasonable prudence under like circumstances." Would not danger, or the reasonable appearance of danger, under the same circumstances of time and place but imperiling any other person than plaintiff, impose the duty on the automobile driver to give necessary signals and warnings of approach? We think so. Should not the consciousness of danger to some one, not the plaintiff, from the reasonable appearance of things and aside from the mere circumstance of the obstructed passage, have been awakened in the driver by the prompt and positive admonition of the witness H. E. Bibb, a passenger on defendant's car at the time in question, to, "Look out, there is a big truck [or car] down there," and was it not indicated in the driver's acknowledgment or answer, "Yes"? This admonition or warning alone was sufficient to cause a reasonably prudent driver not only to approach such a point in an obstructed street with his car

under proper control, and to maintain a proper "lookout," but to give due signals and warnings of his approach and intended passage. These circumstances—the reasonable appearance of conditions at the place, together with the warning of his companion—irrespective of whether the driver calculated that plaintiff was in no danger, laid upon the driver the duty to take the precautions indicated. That such duty of "lookout" was recognized at the time by the driver is shown by his testimony:

"I was watching the rear end of the truck in order that if anything came out—a man never knows—and I saw the child just as she passed out, and there was no earthly chance whatever."

If that driver had been giving signals of approach, such as sounding alarms and carrying lights, or had been watching the front ends of these standing cars, as well as the rear, to see if any one came out, and all the while holding his car under control, it is more than probable that the injury would not have been inflicted. The street was straight, and unobstructed except by the two cars standing therein, which the driver was about to pass, and except by the shadows of nightfall. If the driver saw the children on the thoroughfare at the point of its obstruction and his intended passage, then, whether he realized the plaintiff's danger or not, it was his duty to approach and pass such point with his car under control, and to give the reasonable signals and warnings required of drivers of motor cars coming from behind obstructions of, on and along public highways, or around a blind corner thereof. Hood & Wheeler Fur. Co. v. Royal, supra; Huddy on Automobiles, §§ 122, 125; Mendleson v. Van Rensselaer, 118 App. Div. 516, 103 N. Y. Supp. 578; Lorenz v. Tisdale, 127 App. Div. 433, 111 N. Y. Supp. 173; Gregory v. Slaughter, 124 Ky. 345, 99 S. W. 247, 8 L. R. A. (N. S.) 1228, 124 Am. St. Rep. 402; 2 R. C. L. "Automobiles," p. 1184.

Moreover, charge E was covered by instructions given orally, and in defendant's given charges 11, 12, and 13.

The tendencies and reasonable inferences to be drawn by the jury from the evidence were such that the affirmative charge was properly refused. Tobler v. Pioneer Co., 166 Ala. 482, 517, 52 South. 86; Amerson v. Coronoa Co., 194 Ala. 175, 69 South. 601.

[7] Whether or not the car was lighted at the time of the accident was competent evidence for the jury, in passing on the question of the reasonable sufficiency of signals and warnings given by defendant's agent, under the charge of negligent operation averred in several counts of the complaint. A. G. S. R. R. Co. v. Gilbert, 6 Ala. App. 372, 60 South. 542, 543; Cent. of Ga. v. Brown, 165 Ala. 493, 51 South. 565; Southern Railway Co. v. Hayes, 194 Ala. 194, 69 South. 641.

There was no error in rulings on the introduction of evidence. It is not deemed

necessary to discuss these rulings in detail, except to say that the fact whether or not defendant's car causing the injury carried a light was material upon the question of the negligent operation of the car at nightfall, as well as upon the question whether the driver gave any signal when he "cut in around" the standing truck sought to be started by witness Harrell.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.