981 So.2d 355 (2006)
JONES FOOD COMPANY, INC.
v.
Clarence SHIPMAN and Kathy Shipman.
1051322.
Supreme Court of Alabama.
December 15, 2006.
Order Overruling Rehearing September 21, 2007.
*356 John M. Bergquist and Dorothy A. Powell of Parsons, Lee & Juliano, P.C., Birmingham, for appellant.
Ted L. Mann and Robert Potter of Mann, Cowan & Potter, P.C., Birmingham, for appellees.
NABERS, Chief Justice.
Jones Food Company, Inc., appeals an order of the trial court denying its motion for a judgment as a matter of law in this premises-liability action. For the reasons discussed below, we reverse.

Facts and Procedural History
During 1998 Clarence Shipman, the owner of Shipman Heating and Air Conditioning, was engaged in the business of installing and repairing heating, ventilation, and air-conditioning ("HVAC") systems in the Gadsden area. On March 11, 1998, an employee of Jones Food, a franchisee of Huddle House, Inc., requested that Shipman service the air-conditioning system at the East Meighan Boulevard Huddle House restaurant operated by Jones Food in Gadsden.
Jones Food took possession of the restaurant site under a September 1995 lease with Doyle Denson, the property owner. An Omelette Shoppe breakfast restaurant operated out of the one-story restaurant building before Jones Food began operating *357 the Huddle House restaurant there. In October 1995 a contractor hired by Jones Food renovated the restaurant. The roof was about 9.5 feet above the ground and flat; it was surrounded by a facade on all four sides that extended approximately three feet above the flat roof and enclosed the rooftop improvements. The facade sloped inward at an angle of approximately 45°. The HVAC system was one of the improvements enclosed by the facade. The above-ground modifications included in Jones Food's renovation of the restaurant were the installation of "Huddle House" signs on the facade on three sides of the building, the installation of new electrical wiring for those signs, the installation of new ducts and returns on the air-conditioning units, the installation of an exhaust duct through the roof, and the placement of new refrigerator lines between the service-level and rooftop compressors (collectively "the roof renovations"). The contractor also sealed those areas on the roof where the roof had been cut for the new ducts, the exhaust system, and the refrigeration lines. Jones Food did not alter the roofline or the slope or design of the surrounding facade after it leased the restaurant.
Shipman and Thomas McKinney, his helper, responded to the March 1998 service call from Jones Food. While Shipman had not previously serviced the HVAC system at the restaurant, he had performed similar service for Jones Food at its other Huddle House restaurant locations. Shipman and McKinney decided to use a 20-foot, portable extension ladder, which they placed at the back of the restaurant, to climb over the facade and access the HVAC system. Safety precautions on that ladder warned against positioning it at less than a 75° angle to the ground. An "L" diagram on the ladder illustrated the proper angle at which the ladder should be positioned before climbing. Because the facade sloped inward at approximately 45°, had the ladder been positioned and extended at the 75° angle contemplated by its manufacturer, Shipman and McKinney would have had to jump approximately four feet from the top of the ladder to the edge of the facade. To avoid jumping that gap, Shipman and McKinney leaned the ladder against the slope of the facade so that the ladder was positioned at an approximate 45° angle instead of 75° in accordance with the manufacturer's instructions. As a result, the base of the ladder was positioned so that the resulting angle between the ladder and the ground was 30° less than the minimum angle shown on the "L" diagram that illustrated the proper angle of use.
The feet on the ladder were positioned on a dry, paved surface that sloped slightly away from the back of the restaurant. The bottom of the ladder was not secured in any way. The ladder was not equipped with hooks or another similar device to prevent it from moving at either the bottom or the top while in use. No representative of Jones Food had recommended that Shipman use that particular ladder, had told him to position it against the building at the rear of the restaurant at the same 45° angle as the facade, or had otherwise given him any instruction as to how he should access the HVAC system.
McKinney climbed onto the roof first. Shipman remained on the ground and held the ladder as McKinney ascended. When McKinney reached the top, he stepped over the facade, stood on the roof, and used two hands to hold the ladder against the facade while Shipman climbed. When Shipman neared the top of the facade, McKinney repositioned himself so Shipman could move off the ladder and climb over the facade onto the flat portion of the roof. When McKinney changed his position, he continued to hold onto a rung of *358 the ladder with one hand. However, as Shipman prepared to move off the ladder, its footings kicked out, and Shipman fell to the paved surface below.
In February 2000, Shipman sued Jones Food seeking damages for medical expenses, lost earnings, and personal injuries (including permanent disability to his right leg) that had resulted from the accident. Kathy Shipman, his spouse, also sued Jones Food seeking damages for loss of consortium.[1] The principal claims by the Shipmans were that Jones Food had negligently, recklessly, and wantonly failed (a) to warn Shipman of the danger of the roof, and (b) to repair and maintain the roof area free of defects with railings or to provide a means of access to the roof other than a portable ladder. Jones Food asserted the affirmative defenses of contributory negligence and assumption of the risk.
The Shipmans' action was tried before a jury in January 2006. The jury heard evidence indicating that in July 1996 Thomas Cornelius, a HVAC repairman who worked for an independent contractor unaffiliated with Shipman's company, had fallen from a ladder while servicing the HVAC system at the restaurant. Like Shipman, Cornelius was trying to access the HVAC system on the roof by placing a portable ladder at the rear of the restaurant at the same angle as the facade, i.e., 45° to the ground. The ladder Cornelius used was not secured at the bottom, and it kicked out at the bottom while in use. Cornelius testified that, before he fell, he did not consider himself at risk or notice any open and obvious danger in accessing the roof. Cornelius's fall was reported to the district supervisor for Jones Food, who in turn reported that incident to Tony Jones, a principal of Jones Food. Cornelius did not, however, tell any representative of Jones Food that the ladder he used in July 1996 moved at the bottom or otherwise explain to anyone associated with Jones Food how he fell. When Shipman made his service call in March 1998, no representative of Jones Food told Shipman that Cornelius had fallen from the roof almost two years before. However, before Shipman's accident, Calvin McCoy, a customer was inside the restaurant. As McCoy left the restaurant, he noticed McKinney on the roof and saw a ladder leaning against the building. Before Shipman fell, McCoy told him that an employee of another HVAC contractor had fallen off the roof and that another contractor who had previously successfully accessed the roof of the restaurant had braced the bottom of the ladder against the tire of a truck.
The jury also heard evidence about two building codesthe 1994 editions of the standard gas code ("the gas code") and the standard mechanical code ("the mechanical code")that were effective at the time of Shipman's accident. The preamble to both codes stated their purposes as follows:
". . . [T]o serve as a comprehensive regulatory document to guide decisions aimed at protecting the public's life, health and welfare in the built environment. This protection is provided through the adoption and enforcement, by state and local governments, of the performance-based provisions contained herein."
Section 405.3 of the gas code stated:
"405.3 Access to Appliances

*359 "Appliances located on the roof or other elevated locations shall be accessible.

"EXCEPTION: When the roof is less than 20 ft (6096 mm) above grade, the use of portable means of access is acceptable."
(Emphasis supplied.) Section 304.6.3 of the mechanical code stated:
"304.6.3 . . . Every appliance located on the roof of any building shall be accessible.

"EXCEPTION: When the roof or wall mounted equipment is less than 20 ft (6096 mm) above grade, the use of portable means of access is acceptable."
(Emphasis supplied.)
Brian Harbison, a building official for the City of Gadsden, testified that both the gas code and the mechanical code had been adopted by the City by the time of Shipman's accident. The structure from which Shipman fell had been built before the City adopted those codes. According to Harbison, however, when the contractor hired by Jones Food retrofitted the restaurant in October 1995, the roof renovations then undertaken obligated the owner and Jones Food to comply with the requirements in the gas code and the mechanical code that related to the roof system. The City issued a building permit for the work performed by the contractor. The permit application stated that the work was for "general repairs to [convert] the old [Omelette Shoppe] to a Huddle House." After the contractor finished the renovations, Harbison visually inspected the main level of the restaurant to assure that conditions were safe for the general public. Harbison did not inspect the roof at that time. Harbison testified that, other than the installation of new Huddle House signs on the facade and the associated wiring, he was not aware that the contractor had worked on the roof. After Harbison's inspection, the City issued to Jones Food a certificate of occupancy "in accordance with the laws, ordinances and regulations of the Building Department of the City of Gadsden." At no time did Harbison or any other City official direct Jones Food or the owner of the premises to make any changes to the roof system at the restaurant or cite them for violation of the gas code or the mechanical code.
David Carlysle, a professional engineer, offered expert testimony for the Shipmans. Carlysle testified that it was unsafe to access the roof of the restaurant with a portable ladder positioned at less than the 75° angle to the ground indicated on the manufacturer's warning placed on the ladder. Given the 45° slope of the facade, Carlysle acknowledged that a gap would exist between the ladder and the edge of the facade if a ladder was so placed.[2] Carlysle stated that, after the roof renovations were undertaken in 1995, the gas code and the mechanical codeboth of which required the roof to be "accessible" so the equipment on it could be servicedapplied to the restaurant. According to Carlysle, Jones Food violated both § 405.3 of the gas code and § 304.6.3 of the mechanical code when those renovations were completed because the appliances on the roof, which included the HVAC system, were not "accessible." Carlysle testified that the roof would have been brought "up to code" (i.e., made accessible) after Jones Food renovated the restaurant in 1995 if it *360 had (a) installed a permanently affixed ladder to the exterior wall of the restaurant, (b) created an interior access to the roof, (c) notched out a portion of the sloping facade so that the top of the outside wall would be at a 90° angle to the flat roof and a portable ladder could lean against the building at the recommended 75° angle, or (d) had a man-lift or other similar device available by which workers could access the roof. Carlysle testified that the use of a permanent ladder would have been the least expensive approach for Jones Food to satisfy the accessibility requirement of the codes. Such a permanent ladder had been installed at another of Jones Food's Huddle House locations.
Considerable testimony was offered at trial concerning Shipman's decision to place his ladder at the same slope as the facade. Shipman testified that he noticed the 45° slope of the facade before to the accident, but he did not sense anything risky about the method he and McKinney used to ascend to the roof nor did he observe any open and obvious danger associated with the roof. Tony Jones testified that, on approximately eight occasions before the accident, he and another representative of Jones Food had accessed the roof by placing a portable ladder along the slope of the facade. According to Jones, on some of those occasions, the ladder was secured at the bottom, but on others it was not. On some of those occasions, one Jones Food worker held the portable ladder steady against the facade while the other climbed, but Jones testified that he climbed several times while the ladder was not secured at the bottom and was not being held. Jones testified that he did not consider it unreasonably dangerous to climb a ladder that was aligned along the slope of the facade of the building and that was not secured at the bottom.
John Verhalen, a professional engineer and expert witness for Jones Food, testified that it was obvious that the bottom of an unsecured portable ladder could kick out under the weight of a user if the ladder was positioned at a 45° angle to the ground. Both Verhalen and Carlysle testified that the manner in which Shipman configured the ladder had contributed to the accident. However, Verhalen also testified that it was reasonably safe for McKinney and Shipman to use the ladder as they did, provided that, while Shipman was climbing, McKinney could exert sufficient force to hold the ladder against the facade and prevent it from moving at the bottom.[3]
The jury returned verdicts for the Shipmans; it awarded Mr. Shipman damages of $270,000 on his personal-injury claim, and $30,000 to Mrs. Shipman on her loss-of-consortium claim. The trial court reduced Mr. Shipman's damages award by $25,000, the amount received in a pro tanto settlement with the property owner (see note 1). Following the denial of Jones Food's posttrial motions, Jones Food appealed.

Standard of Review
Jones Food argues that the trial court should have granted its motion for a judgment as a matter of law ("JML"). This Court reviews de novo the grant or denial of a motion for a JML, determining whether there was substantial evidence, when viewed in the light most favorable to the nonmoving party, to produce a factual *361 conflict warranting jury consideration. Alfa Life Ins. Corp. v. Jackson, 906 So.2d 143, 149 (Ala.2005) (citing Ex parte Helms, 873 So.2d 1139, 1143-44 (Ala.2003)). "`"[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."'" Dolgencorp, Inc. v. Hall, 890 So.2d 98, 100 (Ala. 2003) (quoting Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833, 837 (Ala. 2003), quoting in turn West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).

Analysis
The jury returned its verdicts on the Shipmans' negligence theory.[4] "To establish negligence, a plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994); Albert v. Hsu, 602 So.2d 895, 897 (Ala. 1992). Negligence is a mixed question of law and fact. Whether the defendant in a negligence action owed the claimant a duty is strictly a question of law. RaCON, Inc. v. Tuscaloosa County, 953 So.2d 321 (Ala. 2006). If the trial court determines that the defendant owed the plaintiff a duty, then the questions of breach of that duty, proximate causation, and damages are normally resolved by the jury.[5]
Under Alabama law, a person invited onto another's premises for commercial purposes is an invitee. See Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158, 161 (Ala.1997). The duty owed by the invitor to an invitee is to exercise ordinary and reasonable care to keep the premises in a reasonably safe condition. Winn-Dixie v. Godwin, 349 So.2d 37 (Ala.1977). The party who controls the premises is not an insurer of the safety of the invitee, and no presumption of negligence arises from the mere fact of an injury to the invitee. See Great Atl. & Pac. Tea Co. v. Bennett, 267 Ala. 538, 103 So.2d 177 (1958).

Duty of Jones Food Under Common Law
At the time of his accident, Shipman was an independent contractor hired by Jones Food. Addressing the common-law duty owed a contractor, this Court has stated:
"`"[The] invitor . . . was under a duty to have the premises free from danger, or if they were dangerous, to give its invitee . . . [the contractor] sufficient warning to enable him, through the exercise of reasonable care, to avoid the danger. This duty includes the duty to warn the invitee of danger of which the invitor knows or ought to know, and of which the invitee does not know.
"`"[The invitor] is not responsible to [the contractor] for injury from defects or dangers which the [contractor] knows of, or ought to know of. `If the defect or danger is hidden and known to the [invitor], and neither known to the [contractor], nor such as he ought to know, it is the duty of the [invitor] to warn the [contractor] and if he does not do this, of course, he is liable for resultant injury.'

*362 "`"The duty to keep an area safe for invitees is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care. All ordinary risks present are assumed by the invitee, and the [invitor] is under no duty to alter the premises so as to [alleviate] known and obvious dangers. The [invitor] is not liable to an invitee for an injury resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care. The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."
"` . . . A plaintiff may not recover if the injury he receives is caused by an obvious or known defect in the premises.'"
Sessions v. Nonnenmann, 842 So.2d 649, 651-52 (Ala.2002) (quoting Breeden v. Hardy Corp., 562 So.2d 159, 160 (Ala.1990)) (some emphasis added; some emphasis omitted).
Jones Food argues that the ladder configuration selected by Shipmanaligning the ladder to the ground at the same 45° angle as the facade surrounding the roof was a hazard that Shipman appreciated and that that configuration caused his injury. The Shipmans contend that the evidence was disputed as to whether Shipman should have observed that danger, whether the hazard was open and obvious, and whether he failed to exercise reasonable care for his own safety. Consequently, they argue, the trial court properly submitted the questions of proximate causation, contributory negligence, and assumption of the risk to the jury.
As a threshold matter, we consider whether Jones Food owed Shipman a duty at the premises, which is a question of law. After Shipman saw the roof elevation and the slope of the facade, he elected to use a portable ladder to climb to the roof. The alleged hazard is the inaccessibility of the roof except when using a portable ladder placed on the ground at approximately a 45° angle. If that purported hazard was an open and obvious danger that reasonably should have been observed by Shipman, Jones Food's common-law duty to warn Shipman of or to eliminate that hazard is negated as a matter of law, and our consideration of the questions of proximate causation, contributory negligence, and assumption of the risk is pretermitted. See Sessions, 842 So.2d at 652 (a finding of open and obvious hazard defeated negligence claim and forestalled analysis of an affirmative defense).
In a premises-liability setting, we use an objective standard to assess whether a hazard is open and obvious. As discussed in Sessions, the question is whether the danger should have been observed, not whether in fact it was consciously appreciated:
"[I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a duty on the invitor to eliminate open and obvious hazards or to warn the invitee about them, the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap. While Breeden [v. Hardy Corp., 562 So.2d 159 (Ala.1990)], does recite that `[a]ll ordinary risks present are assumed by the invitee,' 562 So.2d at 160, this recitation cannot mean that the invitor's duty before a mishap is determined by the invitee's subjective state of mind at the moment *363 of the mishap. This Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn the invitee about them if the invitor `should anticipate the harm despite such knowledge or obviousness.' Ex parte Gold Kist, Inc., 686 So.2d 260, 261 (Ala.1996). . . . "
842 So.2d at 653-54 (some emphasis added).
This Court has previously considered whether the use of a ladder on another's premises constituted an open and obvious hazard. In Quillen v. Quillen, 388 So.2d 985 (Ala.1980), the defendant asked the plaintiff to install an aerial antenna on the roof of the defendant's residence. The plaintiff placed a portable ladder against the metal gutter of that residence, climbed to the roof, and performed the service. As the plaintiff began his descent, he stepped on the top of the ladder, and it slid out from under him; he suffered personal injuries when he fell to the ground. Quillen, 388 So.2d at 987. The Quillen Court held that, as a matter of law, the defendant/invitor did not owe a duty to the plaintiff/invitee:
"The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.
"We are of the opinion that an aluminum ladder leaning against a metal gutter constituted an open and obvious danger on the defendant's property which the plaintiff, in the exercise of reasonable care, should have recognized. There was no defect in the ladder, and its placement and position on the premises were as obvious to the plaintiff as they were to the defendant. The defendant, therefore, cannot be held liable for injuries suffered by the plaintiff when the ladder fell."
388 So.2d at 989 (emphasis supplied; citations omitted).
Quillen is persuasive authority. In light of that decision and other facts here (including the "L" diagram on the portable ladder warning the user to not position it at an angle less than 75°), a reasonable person should have perceived the risk that a ladder leaned against the facade of the restaurant at a 45° angle to the ground could shift at the bottom under the user's weight if the footing of the ladder was not secured. Under these circumstances, we cannot conclude that Jones Food had superior knowledge of the purported hazard on the premises (i.e., the fact that the roof was inaccessible by ladder except when the ladder was placed at a 45° angle) that was superior to the knowledge possessed by Shipman. Even if we conclude that there is no evidence indicating that Shipman subjectively perceived a risk of injury before his fall, Jones Food owed no common-law duty to Shipman because the attendant risk here was open and obvious. Accordingly, the trial court should not have submitted the Shipmans' claim to the jury on their simple negligence theory.

Duty Arising from Purported Code Violations
The Shipmans contend that the gas code and the mechanical code required that the appliances on the rooftop of the restaurant be "accessible" to repairmen. Jones Food agreed in sections 7(c), 10, and 14 of the lease between it and the property owner to use, improve, and maintain the restaurant "in full compliance with all applicable laws and ordinances." Under these circumstances, the Shipmans argue, Jones Food breached a "nondelegable duty" when it allegedly failed to comply *364 with the City ordinance that adopted the gas code and the mechanical code.[6]
We disagree. The Shipmans assert a negligence claim, not a contract action. They were not parties to the lease agreement between Jones Food and the property owner, nor is any argument made that they were third-party beneficiaries of that agreement.[7]
The Shipmans rely primarily on two cases, Fuller v. Tractor & Equipment Co., 545 So.2d 757 (Ala.1989), and Gardner v. Vinson Guard Service, Inc., 538 So.2d 13 (Ala.1988), in support of their argument that Jones Food had a nondelegable duty to Shipman. However, both of those cases are inapposite; neither concerned the duty owed an invitee for hazardous conditions on the premises.[8] In view of our well-established principles of premises liability, we decline to recognize that the alleged code violations or the language of the lease agreement created a "nondelegable duty" on behalf of Jones Food to Shipman that supplants the common-law standard.
As an alternative to the general common-law duty, this Court has recognized that a premises owner that violates a statute, ordinance, or regulation may owe a special duty to an invitee. In Parker Building Services Co. v. Lightsey, 925 So.2d 927 (Ala.2005), we stated that, under the negligence per se doctrine, the enactment of a statute, ordinance, or building code can replace the common-law standard of the reasonably prudent man with an absolute standard of care. 925 So.2d at 931.[9] Here, the jury was not charged on *365 that doctrine, and negligence per se was not pleaded, argued, or otherwise asserted in the trial court. Consequently, we may not consider the negligence per se doctrine as an alternative basis for affirming the judgment of the trial court.

Conclusion
For the reasons stated above, the judgment against Jones Food is reversed. This cause is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LYONS, WOODALL, SMITH, and PARKER, JJ., concur.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED. NO OPINION.
WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
SEE and LYONS, JJ., concur specially.
COBB, C.J., dissents.
SEE, Justice (concurring specially).[1]
On March 11, 1998, Jones Food Company, Inc. ("Jones Food"), a franchisee of Huddle House, Inc., retained Clarence Shipman, the owner of Shipman Heating and Air Conditioning, to service the heating, ventilation, and air-conditioning ("HVAC") system at its East Meighan Boulevard Huddle House restaurant in Gadsden. Shipman had performed similar services for Jones Food at other Huddle House restaurant locations.
Shipman and his assistant, Thomas McKinney, made the service call. The roof of the restaurant was about 9.5 feet above the ground and flat; on all four sides, however, it was surrounded by a facade that sloped inward at approximately a 45-degree angle and extended approximately three feet above the flat roof, enclosing the rooftop HVAC components. Shipman and McKinney decided to use a 20-foot, portable extension ladder to climb over the facade to access the HVAC system. Safety instructions on the ladder warned against positioning it at an angle to the ground of less than 75 degrees. A diagram on the ladder illustrated the proper angle for positioning the ladder before ascending it.
If the ladder had been positioned at the 75-degree angle contemplated by the manufacturer, the top of the ladder would have been approximately four feet from the top of the facade because of the 45-degree inward slant of the facade. To avoid this, Shipman and McKinney leaned the ladder against the face of the facade; the result was that the ladder leaned at approximately a 45-degree angle to the ground instead of the 75-degree angle recommended by the manufacturer. Thus, the base of the ladder was positioned so that the angle between the ladder and the ground was substantially less than the minimum angle recommended by the manufacturer and illustrated by the diagram on the ladder, with the feet of the ladder resting on a dry, paved surface that sloped slightly away from the back of the restaurant. The bottom of the ladder was not secured in any way, and the top of the ladder did *366 not have hooks or any other device to secure it to the roof.
No Jones Food representative had recommended that Shipman use the particular ladder that he chose to use. No Jones Food representative had told Shipman to position his ladder against the building at the rear of the restaurant at the angle of the facade, nor had any Jones Food representative otherwise given Shipman any instruction as to how he should access the HVAC system.
Shipman remained on the ground and held the ladder as McKinney climbed onto the roof. When McKinney reached the top of the facade, he stepped over it, stood on the roof, and held the top of the ladder while Shipman climbed to the roof. When Shipman neared the top of the facade, McKinney repositioned himself so that Shipman could climb over the facade and onto the roof. As McKinney changed his position, he continued to hold the ladder with one hand; however, as Shipman prepared to step over the facade, the foot of the ladder slipped and Shipman fell to the ground.
Shipman sued Jones Food, seeking damages for medical expenses, lost earnings, and personal injuries (including permanent disability to his right leg) that resulted from the accident. Kathy Shipman, Shipman's spouse, also asserted a claim of loss of consortium. The principal claims by the Shipmans were that Jones Food had negligently, recklessly, and wantonly failed (1) to warn Shipman of the danger of the roof, and (2) to repair and maintain the roof area free of defects with railings or to provide a means of access to the roof other than a portable ladder. Jones Food asserted the affirmative defenses of contributory negligence and assumption of the risk.
On the day of Shipman's accident, a customer, Calvin McCoy, was inside the restaurant. As McCoy left the restaurant, he noticed McKinney on the roof and saw a ladder leaning against the building. Before Shipman fell, McCoy told him that an employee of another HVAC contractor had fallen from the roof and that another contractor had braced the bottom of the ladder against the tire of a truck in order to secure it.
Shipman testified that he had noticed the 45-degree slope of the facade before the accident, but that he did not think there was anything risky about the method he and McKinney used to access the roof, nor did he observe any open and obvious danger associated with the roof. Tony Jones, the owner of Jones Food, testified that on approximately eight occasions before the accident he and another representative of Jones Food had accessed the roof by placing a portable ladder along the slope of the facade. On some of those occasions the ladder was secured at the bottom, but on others it was not. Jones also testified that he did not consider it unreasonably dangerous to climb a ladder that was aligned along the slope of the facade of the building and that was not secured at the bottom. John Verhalen, a professional engineer and expert witness for Jones Food, on the other hand, testified that it was obvious that the bottom of an unsecured portable ladder could "kick out" under the weight of a user if the ladder was positioned at a 45-degree angle to the ground.
The jury returned verdicts in the Shipmans' favor. Following the denial of Jones Food's posttrial motions, Jones Food appealed.
The Chief Justice in her dissent states that she is of the "opinion that the trial court did not err in denying Jones Food's motion for a judgment as a matter of law," based on "the fact that the question whether *367 a danger is open and obvious is generally one of fact for the jury and given Jones's testimony that he did not consider it unreasonably dangerous to climb a ladder that was aligned with the slope of the [45-degree] facade of the building and that was not secured at the bottom." 981 So.2d at 370.
The dissent cites Howard v. Andy's Store for Men, 757 So.2d 1208, 1211 (Ala. Civ.App.2000), for the proposition that the "`question whether a danger is open and obvious is generally one of fact.'" 981 So.2d at 370. Although this is a correct statement of the law in general, this Court has held that certain activities are as a matter of law open-and-obvious hazards that an invitee should recognize through the exercise of reasonable care. Ex parte Schaeffel, 874 So.2d 493 (Ala.2004) (holding total darkness to be an open-and-obvious hazard as a matter of law); Sessions v. Nonnenmann, 842 So.2d 649 (Ala.2003) (holding that an open stairwell is an open-and-obvious hazard as a matter of law); Lilya v. Greater Gulf State Fair, 855 So.2d 1049 (Ala.2003) (holding that the riding of a mechanical bull is an open-and-obvious hazard as a matter of law); and Ex parte Neese, 819 So.2d 584 (Ala.2002) (holding that an upside-down doormat left out in the rain on a sidewalk is an open-and-obvious hazard as a matter of law).
Quillen v. Quillen, 388 So.2d 985 (Ala. 1980), holds that an aluminum ladder leaning against a metal gutter is an open-and-obvious hazard as a matter of law. In Quillen, the plaintiff installed and repaired television antennas. At the defendant's request, the plaintiff assisted with the installation of a television antenna on the defendant's house. The plaintiff climbed an aluminum extension ladder that was leaning against a metal gutter. After successfully installing the antenna, the plaintiff was about to climb down the ladder when it shifted, causing the plaintiff to fall. This Court held:
"[A]n aluminum ladder leaning against a metal gutter constituted an open and obvious danger on the defendant's property which the plaintiff, in the exercise of reasonable care, should have recognized. There was no defect in the ladder, and its placement and position on the premises were as obvious to the plaintiff as they were to the defendant."
388 So.2d at 989. The dissent would distinguish Quillen based on Jones's testimony that he had previously used a ladder in the same way Shipman used the ladder and was of the opinion that doing so was not unreasonably dangerous. Jones's actions and testimony, however, cannot alter the law established in Quillen. The fact that some people may have, without incident, ridden mechanical bulls, walked in total darkness, stepped on wet doormats, traversed open stairwells, and ascended precariously situated ladders without perceiving their danger does not negate the open-and-obvious nature of the danger as a matter of law.
The dissent's proposition that Quillen should be distinguished because in this case one person, the business invitor, did not consider the way Shipman positioned Shipman's own ladder to be dangerous would transform the legal question whether certain dangers are open and obvious from one based on observable factsthe positioning and placement of the ladder into one based on whether someone, in particular the business invitor, considered the condition dangerous. If he did not, then the danger was not necessarily open and obvious. I see no justification in reason or in law for such a modification.
I also note that in this case, even if we were to abandon established precedent in favor of the proposal urged by the dissent, it would not alter the outcome. The business *368 invitor's duty arises from his superior knowledge. As this Court stated in Breeden v. Hardy Corp., 562 So.2d 159, 160 (Ala.1990): "`[The] entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.'" (Quoting Heath v. Sims Bros. Constr. Co., 529 So.2d 994, 995 (Ala.1988) (citations omitted).) In the case before us, it cannot reasonably be argued that Jones's knowledge of the danger was superior to Shipman's. Although the record is unclear as to whether Jones was aware of the prior accident at the restaurant involving a ladder, the undisputed testimony at trial was that one of Jones's customers, Calvin McCoy, told Shipman of the prior accident before Shipman began climbing the ladder. Thus, even ignoring the fact that climbing ladders is apparently an integral part of Shipman's business, Shipman's knowledge of the particular situation that presented itself to him at the East Meighan Boulevard Huddle House restaurant in Gadsden was the same as, or greater than, Jones's.
The facts both in Quillen and in this case indicate that the plaintiffs in both cases failed to exercise the reasonable care required by the open-and-obvious hazard of an improperly positioned ladder. In both cases, the plaintiffs were trained craftsmen, skilled in their respective businesses. There is no indication in either case that the defendant-invitor possessed superior knowledge or owed any special duty to the plaintiff. In both cases, the open-and-obvious nature of the hazard extinguished any duty that would otherwise have been owed the invitees by the invitors. The prior holding of this Court that "Jones Food owed no common-law duty to Shipman because the attendant risk here was open and obvious" should not be disturbed when the law is clear, settled, and apposite. Jones Food Co. v. Shipman, [Ms. 1051322, December 15, 2006] 981 So.2d 355, 363 (Ala.2006). The judgment against Jones Food Company was properly reversed.
For these reasons and because the Shipmans have not demonstrated that this Court overlooked or misapprehended any point of law or fact, Rule 40, Ala. R.App. P., I concur in overruling the application for a rehearing.
LYONS, J., concurs.
COBB, Chief Justice (dissenting).
I dissent from the majority's decision to overrule the Shipmans' application for rehearing. The opinion in this case was issued before I took office as Chief Justice. That opinion reversed the trial court's judgment in favor of the Shipmans and held that the particular placement of a ladder against the facade surrounding the roof of a Huddle House restauranti.e., at a 45-degree angle to the groundcreated an open and obvious danger as a matter of law. I disagree with that holding, and I would grant the application for rehearing and affirm the judgment.
In its opinion, this Court, quoting Sessions v. Nonnenmann, 842 So.2d 649, 651-52 (Ala.2002), correctly stated the law concerning the duty an invitor owes a contractor hired to perform work on the invitor's property. However, I believe that this Court failed to properly consider the testimony of Tony Jones, the owner of Jones Food Company, Inc. During trial, Jones admitted that he owed a duty to Shipman to disclose that Thomas Cornelius, another heating-and-air-conditioning repairman, had suffered a prior fall at the Huddle House restaurant. The following exchange occurred during trial:
"[Plaintiffs' counsel]: [In your deposition,] I asked you this question: `Okay.

*369 If you knew thatIf you knew that that person had fallen or if your company knew that that person had fallen from the roof, where a ladder slid off that metal roof, do you believe or do you feel that your company would have had an obligation to tell Mr. Shipman about that prior injury?' What's your answer?
"[Jones]: I saidMr. Bergquist said you have to answer. Let's see.
"[Plaintiffs' counsel]: And what was your answer?
"[Jones]: I said, `Yes.' Okay. Yes.
"[Plaintiffs' counsel]: And your answer was yes, wasn't it?
"[Jones]: Yes, sir. If I had known.
"[Plaintiffs' counsel]: And at that point
"[Jones]: If I had known for sure that he had fell off the building.
"[Plaintiffs' counsel]: Well, my question was not only if you knew, but if your company knew, wasn't it?
"[Jones]: Yes, sir that's whatIt's got your company. Uh-huh.
"[Plaintiffs' counsel]: Right. So, let me ask you that question again, Mr. Jones. If somebody in your company knew that Thomas Cornelius fell off a ladder at that East Gadsden store before Mr. Shipman came out there and put one on that roof to go up there and do some work on your air conditioner, your company had an obligation to tell him about that prior injury, didn't they?
"[Jones]: Yes.
"[Plaintiffs' counsel]: Now, if your company knew that Thomas Cornelius had fallen off that roof and you let Clarence Shipman put a ladder on that roof on the same angle, your company consciously made a decision to let that gentleman go out there and endanger himself on the roof that you knew somebody else had been hurt on, didn't you?
"[Jones]: I don't want anyone to get hurt.
"[Plaintiffs' counsel]: That's not what I asked you, Mr. Jones. Your company made a conscious decision, if it knew that Mr. Cornelius fell from that roof prior to Mr. Shipman going out there, to let Mr. Shipman go up there and face whatever danger may bemay exist in going on that roof with a ladder, didn't it?
"[Jones]: When you put it like that, yes."
Although Jones was uncertain as to whether he learned of Cornelius's fall prior to or immediately after Shipman's fall, he admitted that some employees of Jones Food had knowledge of Cornelius's fall before Shipman fell. Furthermore, Jones testified that he had accessed the roof at least eight times, and some of those times had been by way of an unsecured ladder set at a 45-degree angle. Jones also testified that he did not consider it unreasonably dangerous to climb a ladder that was aligned along the slope of the facade of the building and that was not secured at the bottom.
When confronted with questions involving actionable negligence, this Court must adhere to the following standard:
"`[W]here from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions as to negligence or contributory negligence, such questions are for the jury, and it is only when the facts are such that all reasonable men must draw the same conclusion that negligence or contributory negligence is ever a question of law for the Court. White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479 [(1918)], Tennessee Mill & Feed Co. v. Giles, 211 Ala. 44, 99 So. 84 [(1924)]; Callaway v. Moseley, 131 F.2d 414 (Ala.C.C.A.[1942]); Reaves v. *370 Maybank, 193 Ala. 614, 69 So. 137 [(1915)]. In other words, where not only the facts constituting the conduct of the parties, but also the standard of care which they should have exercised, are to be determined the case is entirely one of fact to be decided by the jury. When the proof discloses such a state of facts, whether controverted or not, that, in essaying to fix responsibility for the injury or damage, different minds may arrive reasonably at different conclusions or may disagree reasonably as to the inferences to be drawn from the facts, the right of a party in a negligence action to have a jury pass upon the question of liability becomes absolute. Drew v. Western Steel Car & Mfg.[Foundry] Co., 17[4] Ala. 616, 56 So. 995, 40 L.R.A., N.S., 890 [(1911)].'
"Patterson v. Seibenhener, 273 Ala. 204, 206-207, 137 So.2d 758, 760 (1962). When a trial court in a negligence case is confronted with a motion for directed verdict it must apply this standard, and, in doing so, must view the evidence in a light most favorable to the party opposing the motion. If any reasonable inference drawn from the evidence proves to be adverse to the moving party, a motion for directed verdict is due to be denied. Turner v. Peoples Bank of Pell City, 378 So.2d 706 (Ala.1979). Alford v. City of Gadsden, 349 So.2d 1132 (Ala. 1977). These principles are applicable to the present case and govern our decision in determining the propriety of the trial court's decision."
Quillen v. Quillen, 388 So.2d 985, 988 (Ala. 1980). "The question whether a danger is open and obvious is generally one of fact." Howard v. Andy's Store for Men, 757 So.2d 1208, 1211 (Ala.Civ.App.2000). "[T]he plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury." F.W. Woolworth Co. v. Bradbury, 273 Ala. 392, 394, 140 So.2d 824, 825-26 (1962). Furthermore, "[t]here is a presumption that a jury's verdict is correct; that presumption is strengthened when the trial court has denied a motion for a new trial." South-Trust Bank v. Donely, 925 So.2d 934, 943 (Ala.2005) (citing First Alabama Bank of South Baldwin v. Prudential Life Ins. Co. of America, 619 So.2d 1313 (Ala.1993)).
Previously, this court has held that placing a ladder against a metal gutter on a home is an open-and-obvious danger. See Quillen, supra. However, I disagree with this Court's opinion that Quillen is persuasive authority. Instead, I find the facts presently before this Court distinguishable from the facts in Quillen. Whereas Jones testified that he had ascended to the roof of the Huddle House in the same manner as did Shipman and did not consider it unreasonably dangerous, no such evidence existed in Quillen.
Given the fact that the question whether a danger is open and obvious is generally one of fact for the jury and given Jones's testimony that he did not consider it unreasonably dangerous to climb a ladder that was aligned with the slope of the facade of the building and that was not secured at the bottom, I am of the opinion that the trial court did not err in denying Jones Food's motion for a judgment as a matter of law. The jury returned a verdict in favor of Shipman, it is obvious that the facts are not such that all reasonable men must draw the same conclusion that the placement of the ladder was an open-and-obvious danger. Therefore, I respectfully dissent from the majority's decision to overrule the application for rehearing.
NOTES
[1] The Shipmans also sued Huddle House, Inc., the national franchisor of the restaurant; Tony Jones (a principal in Jones Food); and Doyle Denson, the property owner. The claims against Huddle House, Inc., were dismissed; the trial court entered a summary judgment on the claims against Jones individually; and the Shipmans dismissed their claims against Denson pursuant to a pro tanto settlement.
[2] Exceptions in both codes allowed a portable means of access to a roof (e.g., a ladder) if the roof was less than 20 feet high. Even though the flat section of the roof was approximately 9.5 feet high, Carlysle opined that the exceptions did not apply because, given the slope of the facade, it was unsafe for a user to jump the gap between the top of a ladder and the facade if the ladder was positioned at the recommended 75°.
[3] Verhalen had no opinions about the applicability of the gas code and the mechanical code. He did not contradict the testimony of Carlysle and Harbison that the codes became applicable to the restaurant building when Jones Food's contractor completed the rooftop renovations in 1995, or Carlysle's testimony that the roof system violated the accessibility requirement in the codes.
[4] The trial judge did not instruct the jury on wantonness or any other theory. Also, the trial court did not charge the jury on punitive damages.
[5] See Sungas v. Perry, 450 So.2d 1085, 1089 (Ala. 1984) (breach, proximate causation, and contributory negligence are issues for jury); Garner v. Covington County, 624 So.2d 1346, 1349 (Ala. 1993) (proximate causation is jury question); and Norfolk Southern Ry. v. Bradley, 772 So.2d 1147, 1155 (Ala.2000) (assessment of damages for jury).
[6] The evidence concerning code violations was as follows: (a) both Harbison (the City building official) and Carlysle (a professional engineer) testified that, when Jones Food undertook the roof renovations in 1995, those modifications required that the roof system be "brought up to code"; (b) Carlysle testified that the appliances on the roof were not accessible within the meaning of the codes; (c) according to Carlysle, Jones Food should have installed a permanently affixed ladder or taken other remedial actions to comply with the accessibility requirement in the codes; and (d) Carlysle testified that, although the codes provided that a portable means of access could be used to access the roof because it was less than 20 feet high, a ladder could not be safely used as a means of access because of the slope of the upper portion of the facade. Jones Food rebutted that evidence by proving that it obtained a building permit in 1995 when it renovated the restaurant, that the City of Gadsden inspected the building and issued it a certificate of occupancy after the renovations were completed, and that the City had not cited Jones Food for any code violations concerning the roof system.
[7] The Shipmans acknowledge that their claim against Jones Food is not founded in contract (Shipmans' brief, pp. 51, 54).
[8] The Fuller Court held that the defendant owed a non-delegable duty to the plaintiff/employee of the party with whom the defendant contracted to install an air-conditioning system in a front-end loader. 545 So.2d at 759-60. The defect in Fuller concerned the absence of a safety guard on that equipment, not a hazardous condition on the defendant's premises. Likewise, in Gardner, this Court held that the defendant/security-guard service that had contracted with the plaintiff's employer assumed a duty to the plaintiff/employee on a negligence theory when the guard service advised the plaintiff that criminals had left the premises where the plaintiff worked. 538 So.2d at 15. Gardner was not a premises-liability case, and the dispute there did not concern an alleged hazard in the premises that was reasonably attributable to its owner.
[9] "[N]ot every violation of a statute or an ordinance is negligence per se." Parker Building Services, 925 So.2d at 931. If a defendant violates a legislative standard and causes injury "to a person whom the [legislative enactment] was intended to protect," that violation makes the defendant liable for negligence per se, id.; see also Sessions, 842 So.2d at 654 (stating that plaintiff had not explained how violation of OSHA regulation "would translate into a [special] duty recognized by Alabama law").
[1] The opinion on original submission, released December 15, 2006, was decided by a division of this Court on which I did not sit. On application for rehearing, Chief Justice Cobb, who replaced Chief Justice Nabers, the author of the opinion, dissented from overruling the application on rehearing; the rehearing application was then referred to the entire Court for decision.