Plaintiff Mary J. Hines, who was a housekeeper for defendants Clifford and Maelynn Hardy, slipped on a crosstie on the Hardys' property and fell, injuring herself. She sued the Hardys, alleging negligence and wanton conduct, and the trial court entered summary judgment for the Hardys on both claims.
Hines had worked for the Hardys two days a week for the past 14 years, performing such services as cleaning, ironing, tending to the children, and running errands. On the day of her fall, Hines parked her automobile in front of the Hardys' house around 8:30 a.m. and walked up the driveway. Sometime later that morning she decided to leave to make her car payment. She used the front door and walked across the yard, rather than down the driveway, and discovered that her car would not start. Upon returning to the house to call her husband for a ride, Hines stepped onto the crosstie, slipped, and fell backward onto the ground.
We hold initially that Hines was an invitee, as opposed to a licensee, on the Hardys' premises, by virtue of her presence there to perform a helpful or necessary service for which she had contracted.[1] *Page 1284 
See Raney v. Roger Down Ins. Agency, 525 So.2d 1384 (Ala. 1988). The Hardys, therefore, had a duty to warn Hines of hidden dangers of which they knew or ought to have known. Quillen v.Quillen, 388 So.2d 985 (Ala. 1980). However, "as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." 388 So.2d at 989.
In a recent case, Terry v. Life Ins. Co. of Georgia,551 So.2d 385, 386 (Ala. 1989), this Court discussed the definitions of "known" and "obvious" dangers:
 "The Restatement (Second) of Torts § 343A (1965) states:
 " '(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.'
"Comment b defines 'known' and 'obvious.' In order [for a factfinder] to conclude that the defect was 'known,' the plaintiff must be aware of the existence of the conditionand must appreciate the danger it involves. 'Obvious' means that the condition and risk are apparent to, and would be recognized by, a reasonable person in the position of the invitee. Therefore, the 'obvious' test is an objective one."
With regard to her knowledge of the crosstie, Hines stated in her deposition as follows:
 "Q. Okay. When you got back out of the car, and were going into the house, was it still raining?
 "A. Yes, it was drizzling. A little fine, you know, a rain, like I said. A little drizzle.
"Q. About the same as it had been?
"A. Yes. Just a drizzle rain.
 "Q. And this time you say you stepped on a crosstie?
 "A. Stepped up on a crosstie, and when I stepped on it is when I went to sliding.
 "Q. Had you seen the crosstie before you stepped on it? "A. Well, I wasn't thinking, you know. I really wasn't. I didn't think if I stepped up on it I was going to fall, because if [I'd known] I was going to fall I never would have stepped up on it.
"Q. Did you see it before you stepped on it?
 "A. Yes, I [was] looking, you know, when I stepped — when I stepped up on it, and that is when I fell.
 "Q. It was nothing to stop you from seeing the crosstie there?
"A. No. Wasn't nothing there to stop.
 "Q. I mean it wasn't covered up with any dirt of pine straw or anything?
 "A. Well, you know, where it had rained I guess, and stuff had done washed over on it. You know the pine straw.
"Q. Could you see it?
"A. See what?
"Q. The crosstie?
"A. Well, it was down there for me to see.
 "Q. Was there anything stopping you from seeing it, if you were looking at it?
"A. No.
". . . .
 "Q. How long had those crossties been in the yard?
 "A. Well, I really, I guess — I don't know. They hadn't been there ever since when they first moved there. I remember my husband helped them put them down.
"Q. He did? *Page 1285 
 "A. Yes. Hauling them down, . . . he helped them.
 "Q. Had they been there a year? "A. Yes, they had been there a year.
"Q. Or more?
"A. More [than] a year, yes.
 "Q. So your husband helped Mr. Hardy put them down?
 "A. He helped haul them there. You know, brought them there on a trailer or something."
Hines argues that, even though she knew the crosstie was there, she did not know that it was slippery or appreciate that a dangerous condition existed. This Court rejected an identical argument by the plaintiff in Langley v. Bob's Chevron,554 So.2d 1024 (Ala. 1989). Felix Langley, a patron at Bob's Chevron, slipped and fell on gasoline that had spewed out of the nozzle he was using and onto the ground. He claimed that the gasoline constituted a hidden danger because, he said, he did not know the slippery nature of gasoline.
We rejected that argument, stating, "It is obvious that Langley was aware of the gasoline on the ground and tried to avoid it while filling his tank. The slippery nature of gasoline spilled upon a concrete surface was not a hidden danger. Under these facts, the evidence shows, as a matter of law, that Langley had notice of the dangerous condition. Bob's Chevron had no duty to warn." 554 So.2d at 1025.
Here, it is clear that Hines knew about the crosstie and that its surface was wet due to the rain that day. As in Langley v.Bob's Chevron, we find that the evidence shows, as a matter of law, that Hines had notice of the slippery condition of the crosstie. Cf. Williams v. Newton, 526 So.2d 18 (Ala. 1988) (question of fact as to whether plaintiff had actual notice of ice at entrance to business).
This proposition is strengthened further by the fact that Hines's husband had put down the crosstie and the fact that Hines had worked for the Hardys for 14 years and was, thus, familiar with the surroundings and the property. See, e.g.,Knight v. Seale, 530 So.2d 821 (Ala. 1988) (neighbor helping landowner repair hole in roof knew of presence of hole because he had previously worked on the roof; thus, landowner had no duty to warn).
The summary judgment for the Hardys is, therefore, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and SHORES, JJ., concur.
[1] On appeal, the Hardys argue that Hines was a licensee when she fell because, by returning to the house for personal reasons, she had abandoned her original purpose for being at their house. They cite Standard Oil Ca of Ind., Inc. v. Scoville,132 Ind. App. 521, 175 N.E.2d 711 (1961), in which an invitee lost that status and became a licensee upon returning to a business to discuss a personal problem. We decline to apply such a hypertechnical construction. It is obvious that, but for the Hardys' invitation to Hines to perform services for them, she would not have been on their property that day.