Rosa Faye Paschal ("the customer") sued Fred's Department Store ("the store"), alleging that, as a result of the store's negligent or wanton failure to maintain its business premises in a safe condition, she was injured when she tripped and fell in an aisle of the store. The store answered, denying the customer's allegations and asserting the affirmative defenses of open-and-obvious hazard and contributory negligence.
The case was tried to a jury. The store moved for a judgment as a matter of law ("JML") at the close of the customer's case-in-chief and again at the close of all the evidence. The trial court denied both motions. The jury returned a verdict in favor of the customer and assessed her damages in the amount of $15,000. The trial court entered a judgment on the jury's verdict, and the store timely appealed. *Page 1127 
The evidence established that on December 17, 2002, the customer entered the store to do some Christmas shopping. The customer testified that it appeared to her that the shelves in the store were being restocked because, she said, there were boxes everywhere, merchandise was protruding from the shelves, and a six-foot aluminum ladder was set up in one aisle. The customer said that there was a visible path around the ladder and through the boxes on the floor. The customer warned the shopper in front of her to be careful because, she believed, the boxes and the ladder were trip hazards. The customer watched as the shopper in front of her stepped around the ladder and the boxes. On cross-examination by the store's counsel, the customer testified:
 "Q. You've told us earlier you were trying to be careful as you maneuvered around the boxes to get around the ladder.
"A. Yes.
 "Q. Is that because you realized that was something you could trip and fall over?
 "A. Sure. I had just warned the lady in front of me. And I had several items in my hand, not large items, but I was trying to be careful as well."
The customer stated that she was looking for the price of an item and, that in order to see the price tag, she had to walk around the ladder. She said that, although she was trying to be careful, she tripped and fell, landing on her right hip. She testified that she did not know whether she had tripped on the ladder or on one of the boxes on the floor in the aisle. The customer further testified on cross-examination:
 "Q. Now, you testified earlier that you observed the ladder prior to your tripping and falling; is that right?
 "A. Momentarily. When the lady was going around the ladder, my eyes were fixed on trying to find the price and so were hers.
 "Q. Okay. But you did observe the ladder prior to following the same path that she took to get around the ladder?
"A. I saw the ladder there; yes.
 "Q. And, I take it, I believe you were trying to be careful as you were going around the ladder; is that correct?
"A. Sure."
When asked, on redirect examination by her counsel, whether she was "looking down at [her] feet" to move past the obstructions in the aisle, the customer explained:
 "A. I was trying to — as I moved around, I tried to keep my eyes on the floor in order to get around the ladder and the boxes. And momentarily I took my eyes off the floor with these articles or pieces of stuff that I had in my hands. I took my eyes off the floor momentarily. I thought I had moved myself around the boxes and the ladder."
Also on redirect examination, when the customer was asked whether she was "concerned about the danger of things as [she was] walking down the aisle looking for a price tag," the customer replied in the negative. She explained that she decided to go around the ladder and through the boxes because, she said, an elderly couple was behind her in the aisle and she did not want to make the couple back up in order to allow her to leave the aisle in the opposite direction from the ladder and boxes.
Store manager Joanne Sturkie testified that the store's policy was to stock the shelves during the hours that the store was open to the public. Sturkie said that store employees had used the ladder that was in the aisle to place merchandise on the top shelves. According to Sturkie, store policy required that the ladder be *Page 1128 
removed from the aisle and stored away once the employees were finished stocking the shelves. Sturkie said that she did not see any employees stocking the shelves or using the ladder near the time that the accident occurred.
Richard Paschal, the customer's husband, said that Sturkie told him on the day of the accident that a store employee had been instructed to remove the ladder from the aisle the previous day. Pachal testified that Sturkie stated that she had not had time, on the morning of the accident, to verify that the ladder had been removed.
It is undisputed that the customer was a business invitee of the store. See Ex parte Mountain Top Indoor Flea Market, Inc.,699 So.2d 158, 161 (Ala. 1997) (repeating the rule that when a person visits the premises for commercial purposes the person is an invitee).
 "`[A]s a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court in Lamson Sessions Bolt Co. [v. McCarty, 234 Ala. 60, 63, 173 So. 388, 391 (1937)]:
 `"`In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."'
 "`Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384
(Ala. 1979); Tice v. Tice, 361 So.2d 1051 (Ala. 1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.'"
Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala. 1993) (quoting Quillen v. Quillen, 388 So.2d 985, 989 (Ala. 1980)).
 "We review the trial court's denial of [the store's] motion for a JML under the following standard:
 "`"We apply the same standard of review to a ruling on a motion for a JML as the trial court used in initially deciding the motion. This standard is `indistinguishable from the standard by which we review a summary judgment.'"'"
Dolgencorp, Inc. v. Hall, 890 So.2d 98, 100 (Ala. 2003) (quoting Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833,837 (Ala. 2003)).
On appeal, the store argues that the trial court erred by denying its motions for a JML because, it says, the undisputed evidence established the elements of its open-and-obvious-hazard defense, namely: that the customer saw the potential trip hazard, appreciated the danger associated with the hazard, and acted more carefully because of the perceived danger. The store's argument that the condition that caused the customer's fall was open *Page 1129 
and obvious is an affirmative defense upon which the store bore the burden of proof. See Denmark v. Mercantile Stores Co.,844 So.2d 1189, 1194 (Ala. 2002).
 "[A JML] is proper on the issue of whether a defect was open and obvious when the undisputed evidence shows that the plaintiff was aware of the danger, appreciated the danger, and acted more carefully because of the perceived danger."
Harding v. Pierce Hardy Real Estate, 628 So.2d at 463.
 "Only `"[w]hen there is no genuine issue of material fact as to any element of an affirmative defense, and it is shown that the defendant is entitled to a judgment as a matter of law"' is a summary judgment [or a JML] proper. Wal-Mart Stores, Inc. v. Smitherman, 743 So.2d 442, 445 (Ala. 1999) (quoting Bechtel v. Crown Central Petroleum Corp., 495 So.2d 1052, 1053 (Ala. 1986)). "`If there is a genuine issue of material fact as to any element of the affirmative defense, summary judgment [or a JML] is inappropriate."' Id."
Denmark v. Mercantile Stores Co., 844 So.2d at 1195. See alsoHorne v. Gregerson's Foods, Inc., 849 So.2d 173, 176
(Ala.Civ.App. 2002).
 "`In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant).'
 "Bechtel v. Crown Cent. Petroleum Corp., 495 So.2d 1052, 1053 (Ala. 1986), citing Autrey v. Blue Cross Blue Shield of Alabama, 481 So.2d 345 (Ala. 1985)."
Ex parte Neese, 819 So.2d 584, 587 (Ala. 2001).
The customer's testimony that she observed the boxes and the ladder in the aisle and that she warned another customer "to be careful because the boxes and the ladder were trip hazards" establishes, as a matter of law, that the customer appreciated the danger of an open-and-obvious condition on the store premises. See Ex parte Mountain Top Indoor Flea Market, Inc.,699 So.2d at 162 (holding that "the plaintiff's testimony, in her deposition [that she knew rocks and gravel could be slippery], shows as a matter of law, that she appreciated the danger before she started across the graveled area"). See generally Ex parteNeese, 819 So.2d at 590 (holding that an "upside-down doormat, lying out in the rain, constituted an open and obvious danger on [the premises owner's] property, which [the invitee], in the exercise of reasonable care, should have recognized, as a matter of law").
 "`"In order [for a factfinder] to conclude that the defect was `known,' the plaintiff must be aware of the existence of the condition and must appreciate the danger it involves. `Obvious' means that the condition and risk are apparent to, and would be recognized by, a reasonable person in the position of the invitee. Therefore, the `obvious' test is an objective one."'"
Ex parte Mountain Top Indoor Flea Market, Inc.,699 So.2d at 161 (quoting Hines v. Hardy, 567 So.2d 1283, 1284 (Ala. 1990)).
Viewing the evidence in the light most favorable to the customer, there is simply no dispute regarding whether the customer saw the trip hazard in the store aisle, appreciated the danger of the trip hazard, and acted more carefully because of the perceived danger. The customer's testimony on redirect examination that she was not "concerned about the danger of things as [she was] walking down the aisle looking *Page 1130 
for a price tag" does not create a question of fact about whether she appreciated the existence of the trip hazard and was more careful because of that appreciation. At most, the testimony on redirect examination indicates that the customer, who appreciated the danger associated with the trip hazard and was more careful because of that appreciation, was not concerned or distressed about the hazard.
Because the evidence established, without dispute, all the elements of the store's open-and-obvious-hazard affirmative defense, the trial court erred by denying the store's motions for a JML. The judgment of the trial court is therefore reversed, and the cause is remanded with instructions to enter a judgment in favor of the store.
REVERSED AND REMANDED.
PITTMAN, MURDOCK, and BRYAN, JJ., concur.
THOMPSON, J., dissents, with writing.