28 So.3d 737 (2009)
DOLGENCORP, INC.
v.
Arlie TAYLOR.
1070900.
Supreme Court of Alabama.
June 12, 2009.
Rehearing Denied August 28, 2009.
*738 Robert S. Lamar, Jr., and Rick D. Norris, Jr., of Lamar, Miller, Norris, Haggard & Christie, P.C., Birmingham, for appellant.
Frederick P. Gilmore and Wyman O. Gilmore, Jr., of Gilmore Law Firm, P.C., Grove Hill, for appellee.
*739 SMITH, Justice.
Dolgencorp, Inc. ("Dolgencorp"), which owns and operates Dollar General retail discount stores, appeals from a judgment entered on a jury verdict in favor of Arlie Taylor on Taylor's claims alleging negligence and wantonness. We reverse the trial court's judgment and render a judgment for Dolgencorp.

Facts and Procedural History
On December 2, 2004, Taylor, who was then 68 years old, went to a Dollar General retail discount store ("the store") in Jackson to purchase laundry products. After entering the store, Taylor attempted to push her shopping cart to the back aisle of the store where the laundry products were located by way of the middle aisle; however, the middle aisle was impassible because of displays of Christmas decorations and candy. Taylor then attempted to push her shopping cart to the back aisle by way of an aisle on the right side of the store. She testified at trial that she was "going around boxes" of merchandise that were located on the floor of the aisle as she moved toward the back aisle.
When Taylor arrived at the back aisle of the store, she turned her shopping cart to the left and began looking for the laundry detergent. Taylor testified that there were unopened cases of merchandise on the floor of the back aisle and that she "had to avoid one ... when [she] went to get [her] washing powder." After placing a box of laundry detergent in her shopping cart, Taylor pushed her shopping cart further along the back aisle to the section where the laundry bleach was located. After placing a bottle of bleach in her shopping cart, Taylor moved further down the aisle in search of fabric softener, which was located on the top shelf of the back aisle. Taylor testified at trial that she "step[ped] out from behind the [shopping cart]" to reach for the fabric softener and that when she did she fell over two unopened cases of merchandise that were stacked one on top of the other in the aisle. Taylor testified both in her deposition[1] and at trial that she did not see the two cases of merchandise before she fell over them; she also testified that, based on her observation of other cases of merchandise she had maneuvered around in the store on the day that she was injured, two cases stacked one on top of the other would be approximately "knee or thigh high."
On March 3, 2005, Taylor and her mother, Rena Cave (sometimes referred to collectively as "the plaintiffs"), sued Dolgencorp; Linda Bailey, the manager of the store from January 2004 until January 2005; and fictitiously named defendants (Dolgencorp and Bailey are sometimes referred to collectively as "the defendants"). The complaint alleged, among other things, that Dolgencorp and Bailey had negligently and/or wantonly failed to maintain the premises of the store in a safe condition.[2] The plaintiffs' complaint requested compensatory and punitive damages, plus interest and costs. The defendants filed an answer denying liability and asserting a number of affirmative defenses including the defense that the cases of merchandise in the aisle were an "open and obvious condition."
*740 On September 11, 2007, the defendants filed a motion for a summary judgment, which the trial court denied. At trial, the defendants filed a motion for a judgment as a matter of law ("JML") at the close of the plaintiffs' evidence. In their motion for a JML, the defendants asserted, among other things, that they owed no duty of care to Taylor because, the defendants said, the hazardous condition was "open and obvious" and that the plaintiffs failed to present substantial evidence establishing that the defendants had acted negligently or wantonly.
The defendants also made an oral motion to the trial court to supplement their written motion for a JML. After hearing argument on the defendants' motion for a JML, the trial court stated that it was "striking the punitive damages claim against ... Bailey" and denied the motion for a JML as to the negligence and wantonness claims asserted against Dolgencorp and as to the negligence claim asserted against Bailey.[3] The defendants renewed their motion for a JML at the close of all the evidence; the trial court granted that motion as to the remaining claims asserted against Bailey but denied that motion as to the claims asserted against Dolgencorp.
On September 28, 2007, the jury returned the following verdict:
"We the jury, find for [Taylor], and against [Dolgencorp], on the count of negligence, and fix [Taylor's] compensatory damages therefore at $85,000. Further, we the jury, find for [Taylor] and against [Dolgencorp], on the count of wantonness, and fix [Taylor's] punitive damages at $175,000, in addition to the compensatory damages for negligence."
On October 25, 2007, the trial court entered a judgment on the jury's verdict. That judgment provided, in pertinent part:
"The jury, having returned a verdict for the Plaintiff, Arlie Taylor, and against the Defendant, Dolgencorp, Inc., in the amount of $85,000 in compensatory damages and $175,000 in punitive damages; a judgment is hereby entered accordingly for the Plaintiff, Arlie Taylor, and against the Defendant, Dolgencorp, Inc., in the amount of $85,000 in compensatory damages and $175,000 in punitive damages."
On October 29, 2007, Dolgencorp filed a postjudgment motion styled as a "motion for judgment notwithstanding the verdict and renewed motion for judgment as a matter of law or, in the alternative, motion for new trial, and for remittitur"; that motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P. This appeal followed.[4]

Standard of Review
"When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d *741 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala. 1992)."
Waddell & Reed, Inc. v. United Investors Life Ins. Co., 875 So.2d 1143, 1152 (Ala. 2003).

Issues
Dolgencorp raises two issues on appeal. Dolgencorp first argues that the trial court erred in denying its motions for a JML as to Taylor's negligence claim against it because, Dolgencorp contends, the hazardous condition in the store was open and obvious; thus, Dolgencorp says, it had no duty either to eliminate the hazardous condition or to warn Taylor of the hazardous condition. Conversely, Taylor argues that the cases of merchandise were not open and obvious; instead, Taylor argues that the cases of merchandise were a "hidden danger" because, she says, "it is not only foreseeable to [Dolgencorp], but expected, that a customer such as Ms. Taylor would focus her attention on the shelves when looking for a particular item and not anticipate any tripping hazards in the aisle while doing so."
Dolgencorp also argues that the trial court erred in denying its motions for a JML on Taylor's wantonness claim against it and the request for punitive damages because, Dolgencorp contends, the evidence was not sufficient to support a finding that it "had deliberately engaged in conduct that was in reckless or conscious disregard of the safety of the store's customers." Rather, Dolgencorp argues, the evidence established that "the cases or boxes were placed along the walls of the aisles, out in the open, where they could be seen by any reasonably vigilant shopper." Conversely, Taylor argues that there was "sufficient evidence that [Dolgencorp] knew the boxes were dangerous, exhibited a conscious disregard for the safety of [its] customers, and that [its] customers were ultimately placed in danger for the wantonness claim to be submitted to the jury."

I. Negligence Claim
It is undisputed that Taylor was a business invitee of Dolgencorp. See Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158, 161 (Ala.1997) ("`In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises.'" (quoting Sisk v. Heil Co., 639 So.2d 1363, 1365 (Ala.1994), overruling on other grounds recognized by Sessions v. Nonnenmann, 842 So.2d 649, 654 (Ala.2002))). The liability of a premises owner to an invitee is well settled.
"In a premises-liability setting, we use an objective standard to assess whether a hazard is open and obvious. As discussed *742 in Sessions [v. Nonnenmann, 842 So.2d 649 (Ala.2002)], the question is whether the danger should have been observed, not whether in fact it was consciously appreciated:
"`[I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on the absence of a duty on the invitor to eliminate open and obvious hazards or to warn the invitee about them, the record need not contain undisputed evidence that the plaintiff-invitee consciously appreciated the danger at the moment of the mishap. While Breeden [v. Hardy Corp., 562 So.2d 159 (Ala.1990)], does recite that "[a]ll ordinary risks present are assumed by the invitee," 562 So.2d at 160, this recitation cannot mean that the invitor's duty before a mishap is determined by the invitee's subjective state of mind at the moment of the mishap. This Court has expressly rejected the notion that an invitor owes a duty to eliminate open and obvious hazards or to warn the invitee about them if the invitor "should anticipate the harm despite such knowledge or obviousness." Ex parte Gold Kist, Inc., 686 So.2d 260, 261 (Ala.1996) ....'
"842 So.2d at 653-54 (some emphasis added)."
Jones Food Co. v. Shipman, 981 So.2d 355, 362-63 (Ala.2006). Similarly, this Court has stated that "`[t]he owner of premises has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part.'" Mountain Top Indoor Flea Market, 699 So.2d at 161 (quoting Shaw v. City of Lipscomb, 380 So.2d 812, 814 (Ala.1980), citing in turn Tice v. Tice, 361 So.2d 1051 (Ala.1978)). The test for determining whether a hazard is open and obvious "`"is an objective one."'" Id. (quoting Hines v. Hardy, 567 So.2d 1283, 1284 (Ala.1990), quoting in turn Restatement (Second) of Torts § 343A (1965)).
Dolgencorp's argument that the condition that caused Taylor's fall was open and obvious is an affirmative defense, for which it bears the ultimate burden of proof. Horne v. Gregerson's Foods, Inc., 849 So.2d 173, 176 (Ala.Civ.App.2002) (citing Ex parte Neese, 819 So.2d 584 (Ala.2001), and Furgerson v. Dresser Indus., Inc., 438 So.2d 732, 734 (Ala.1983)).
Dolgencorp, citing Sessions, 842 So.2d at 652, asserts in its brief on appeal that
"openness and obviousness of a hazard, if established, negates the invitor's duty to eliminate the hazard or to warn the invitee of the hazard. This negation of duty, in and of itself, defeats the invitee's injury claim without the operation of any affirmative defense such as contributory negligence or assumption of risk. In other words, in this context, openness and obviousness, if established, negates the duty [and] defeats the claim...."
Dolgencorp primarily relies on the following undisputed evidence in asserting that the cases of merchandise in the aisles were an open and obvious hazard. Dolgencorp asserts that Taylor had shopped at the store approximately once every two weeks during the two- to three-year period preceding the accident and that, as a result, she had long been aware of the cluttered condition of the store; in fact, Taylor testified during her deposition that she was aware that "the place was cluttered" to the extent that "[y]ou couldn't help but know it." Dolgencorp also notes that Taylor testified during her deposition that at some point before the date of her injury she had asked a store cashier, "[H]ow *743 come y'all had all these boxes and stuff down here?"
Dolgencorp also asserts that the cases of merchandise in the back aisle were an open and obvious hazard because Taylor, by her own admission, had maneuvered around other cases of merchandise on the floor of the store before falling over the two cases located on the back aisle. Dolgencorp further asserts that Taylor, in the exercise of reasonable care, should have seen the cases she fell over but did not because, according to her deposition testimony, she had become "distracted" while looking for fabric softener.
Taylor cites several cases in support of her contention that the hazard created by the cases of merchandise was not an open and obvious one, including Wal-Mart Stores, Inc. v. McClinton, 631 So.2d 232 (Ala.1993), Wal-Mart Stores, Inc. v. Rolin, 813 So.2d 861 (Ala.2001), Williams v. Bruno's, Inc., 632 So.2d 19 (Ala.1993), Blizzard v. Food Giant Supermarkets, Inc., 196 F.Supp.2d 1202 (M.D.Ala.2002), and Ryles v. Wal-Mart Stores East L.P. (No. 2:04cv334-T, December 16, 2004) (M.D.Ala.2004) (not reported in F.Supp.2d).
In Wal-Mart Stores, Inc. v. McClinton, McClinton sued Wal-Mart Stores, Inc. ("Wal-Mart"), alleging negligence. McClinton was injured when he slipped and fell in a Wal-Mart store on a piece of wood molding located either on or near a wooden gun cabinet that protruded approximately six inches into the aisle. The jury returned a verdict in favor of McClinton. This Court affirmed the trial court's judgment entered on the jury's verdict and rejected Wal-Mart's argument that the hazard was open and obvious, concluding that "[w]hile it is evident that McClinton saw the displayed cabinet, it is not evident that he knew, or should have known, or that he appreciated, the danger caused by the fact that the cabinet and its molding protruded into the aisle." 631 So.2d at 234.
In Wal-Mart Stores, Inc. v. Rolin, Rolin sued Wal-Mart alleging negligence and wantonness. Rolin was injured when she tripped and fell in a Wal-Mart store over a barbeque-grill display that allegedly protruded into a walkway. After the trial court granted Rolin's motion to dismiss the wantonness claim, the jury returned a verdict in favor of Rolin on the negligence claim. As Taylor specifically notes in her brief on appeal, this Court affirmed the trial court's judgment entered on the jury's verdict and rejected Wal-Mart's argument that it had no notice that the grill display was hazardous, concluding that "the barbeque-grill display is analogous to the gun cabinet in McClinton [, supra,] ... in that there is evidence to indicate that the hazardous condition was created by employees of the premises owner." 813 So.2d at 865.
In Williams v. Bruno's, Inc., Williams sued, among others, Bruno's, Inc. ("Bruno's"), alleging negligence and wantonness. Williams was injured when he slipped and fell in a Food World grocery store. Williams testified that he did not know what caused his fall, but that after his fall he noticed "four to eight small strips of an unidentified material in the floor around him" and that one of the strips was "protruding out" from the bottom grocery shelf approximately six inches into the aisle. 632 So.2d at 20. The trial court entered a summary judgment in favor of Bruno's. This Court reversed the summary judgment as to the negligence claim, concluding that the evidence did not establish that the strips were an open and obvious condition. Specifically, this Court stated:
"One could reasonably infer from [Williams's] testimony that Williams was focusing his attention on the shelves, not *744 that he was not looking where he was going. Nowhere in Williams's testimony does he say that the strips were obvious to him before he fell; in fact, Williams stated that he did not see the strips until after he fell."
632 So.2d at 22.
In Blizzard v. Food Giant Supermarkets, Inc.,[5] Blizzard sued Food Giant Supermarkets, Inc. ("Food Giant"), alleging negligence, wantonness, and failure to maintain a common area. Blizzard was injured when she tripped and fell in a Pic-N-Sav grocery store. Blizzard tripped over an "end-cap pallet," which is a platform that rests on the floor at the end of grocery aisles and is used to display products. Food Giant moved for a summary judgment and, regarding Blizzard's negligence claim, argued that it was entitled to judgment as a matter of law because, among other reasons, the end-cap pallet was an open and obvious hazard. The district court, citing Williams, supra, denied Food Giant's summary-judgment motion as to the negligence claim and concluded that "there is evidence that [Blizzard's failure to perceive the danger occurred because] she was looking at the products put in place by [Food Giant]." Blizzard, 196 F.Supp.2d at 1208.
Finally, Taylor cites Ryles v. Wal-Mart Stores East L.P.,[6] a case in which Ryles sued Wal-Mart Stores East L.P. ("Wal-Mart Stores") alleging negligence and wantonness. Ryles was injured when she tripped and fell over a box of merchandise that had been placed on the floor near a counter. The district court denied Wal-Mart Stores' summary-judgment motion as to the negligence claim and concluded that the box Ryles tripped over "did not, as a matter of law, constitute an open and obvious danger...." Taylor cites Ryles specifically for the following statement: "The above cases [cited in the district court's order, including Williams, supra], therefore, clearly indicate that [the plaintiff's] failure to stare at the floor while walking down the shopping aisle, in particular where the store sought to draw her attention to its shelves, does not prevent her negligence claim from surviving summary judgment." Viewing, as we must, the evidence in the light most favorable to Taylor, there is plainly no dispute regarding whether Taylor saw the cases of merchandise in the aisles of the store, appreciated the hazard posed by those cases, and acted more carefully because of that hazard. The evidenceTaylor's deposition and trial testimonyestablished that Taylor, a regular shopper at the store, had been aware for some time of the "cluttered" condition of the store, that she had at some point before the date of her injury questioned a store employee about the "boxes and stuff" in the aisles, and that she had seen and maneuvered around several other cases of merchandise in the aisles of the store on the day she was injured.
It seems evident that the presence of cases of merchandiseeach of which was at least 12-13 inches high and 15-16 inches widein the aisles of the store presents an open and obvious hazard of a fall. No evidence was presented indicating that the cases of merchandise were in any way obscured or hidden from view; rather, *745 the evidence clearly established that the cases of merchandise had been placed in the aisles in plain view of anyone attempting to navigate the aisles. The application of an objective standard, as set forth in Jones Food, supra, and Mountain Top, supra, compels the conclusion that such a hazard was open and obvious. The condition of the premises was open and obvious for all to see, and it is undisputed that Taylor had noticed and maneuvered around several cases of merchandise in the aisles before her fall.
Based on the foregoing, we conclude that the cases of merchandise that caused Taylor to fall were an open and obvious hazard and that, accordingly, Dolgencorp owed Taylor no duty to eliminate the hazard or to warn her of the hazard. Thus, Taylor's negligence claim fails as a matter of law, and the trial court erred by denying Dolgencorp's motions for a JML on the negligence claim.

II. Wantonness Claim
As mentioned above, Dolgencorp argues, among other things, that the trial court erred by denying its motions for a JML on the wantonness claim against it because the cases of merchandise were an open and obvious hazard and, thus, it says, it had no duty to eliminate the hazard or to warn Taylor of the hazard. See Sessions, 842 So.2d at 652. Dolgencorp correctly notes that this Court previously has defined wantonness "`as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.'" Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala. 1991), quoting in turn McDougle v. Shaddrix, 534 So.2d 228 (Ala.1988) (emphasis added)); in her brief on appeal, Taylor expressly adopts Dolgencorp's "general statement of the law regarding wantonness."
Taylor primarily relies on the following factual assertions in contending that Dolgencorp's conduct rises to the level of wantonness. Taylor contends that cases of merchandise had been stored in the aisles of the store for several years before her accident because, she says, the stockroom was overcrowded with Christmas merchandise and could not hold any additional merchandise. Taylor also contends that, although store employees had made numerous requests of their district manager for assistance regarding the overcrowded stockroom since 1999, their requests had gone unheeded. Taylor further contends that Dolgencorp's wanton conduct is evidenced by the fact that, in October 2001, another store customer had fallen over "some excess merchandise stored in the aisle," but, despite being aware of that accident, Dolgencorp made no effort to remedy the hazardous condition. Moreover, Taylor contends that Dolgencorp acted with reckless disregard for the safety of its customers because, Taylor says, the cases of merchandise were stored in the aisles in violation of store policy.
Taylor contends that the testimony of certain store employees also evidences the wanton nature of Dolgencorp's conduct. Taylor notes that a former store employee, Vicki Brown, testified that the store "was an accident ready to happen" on the day Taylor fell because, according to Brown, "our stockroom was full and we had a floor full of boxes." Taylor also notes that another former store employee, James Bettis, testified that the store was a "wreck," a "mess," and so cluttered that "[y]ou couldn't hardly get through" on the day Taylor fell.
Regarding Taylor's negligence claim, we concluded that the cases of merchandise *746 that caused Taylor to fall were an open and obvious hazard and, accordingly, that Dolgencorp owed Taylor no duty to eliminate the hazard or to warn her of the hazard. Because Dolgencorp owed no duty to Taylor, her wantonness claim must also fail as a matter of law; thus, the trial court erred by denying Dolgencorp's motions for a JML on the wantonness claim. See Sessions, supra; see also Lilya v. Greater Gulf State Fair, Inc., 855 So.2d 1049, 1056 (Ala.2003) (concluding in a case in which Lilya was injured when he fell from a mechanical bull ride while attending a fair on the premises owned by Greater Gulf State Fair, Inc., that the condition that caused Lilya's injuries was an open and obvious hazard, that the premises owner thus owed no duty to warn Lilya of the possible danger, that "[w]ithout the existence of a duty, Lilya's negligence and wantonness claims fail as a matter of law, and that the trial court's summary judgment as to those claims was appropriate" (emphasis added)).
Because Taylor's negligence and wantonness claims fail as a matter of law, we reverse the trial court's judgment and render a judgment for Dolgencorp.
REVERSED AND JUDGMENT RENDERED.
WOODALL, STUART, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
COBB, C.J., dissents.
COBB, Chief Justice (dissenting).
I respectfully disagree with my colleagues that the trial court should have granted the motion for a judgment as a matter of law filed by Dolgencorp, Inc. Therefore, I dissent.
This Court has long held that "a premises owner owes any business invitee `"a duty to exercise reasonable care to maintain its premises in a reasonably safe condition."'" Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 314 (Ala.2003) (quoting Kmart Corp. v. Peak, 757 So.2d 1138, 1144 (Ala.1999), quoting in turn Norris v. Wal-Mart Stores, Inc., 628 So.2d 475, 477 (Ala. 1993)). See also Borden v. Consumer Warehouse Foods, Inc., 601 So.2d 976, 979 (Ala.1992) ("The duty of a shopkeeper to maintain premises in a reasonably safe condition for its invitees is well settled."). However, "as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care." Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980).
As I noted in my dissent to the overruling of the application for rehearing in Jones Food Co. v. Shipman, 981 So.2d 355 (Ala.2006):
"`The question whether a danger is open and obvious is generally one of fact.' Howard v. Andy's Store for Men, 757 So.2d 1208, 1211 (Ala.Civ.App.2000). `[T]he plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury.' F.W. Woolworth Co. v. Bradbury, 273 Ala. 392, [396], 140 So.2d 824, [827] (1962). Furthermore, `[t]here is a presumption that a jury's verdict is correct; that presumption is strengthened when the trial court has denied a motion for a new trial.' SouthTrust Bank v. Donely, 925 So.2d 934, 943 (Ala.2005) (citing First Alabama Bank of South Baldwin v. Prudential Life Ins. Co. of America, 619 So.2d 1313 (Ala.1993))."
981 So.2d at 370 (Cobb, C.J., dissenting).
The majority discusses three opinions of this Court as well as two of the federal district court for the Middle District of Alabama applying Alabama law, all of *747 which held that the question whether an item protruding into the aisle of a store is an open and obvious hazard is one for the trier of fact. The majority in fact quotes Williams v. Bruno's, Inc., 632 So.2d 19 (Ala.1993), in which this Court opined:
"One could reasonably infer from [Williams's] testimony that Williams was focusing his attention on the shelves, not that he was looking where he was going. Nowhere in Williams's testimony does he say that the strips were obvious to him before he fell; in fact, Williams stated that he did not see the strips until after he fell."
632 So.2d at 22. I believe the same rationale holds true in this case.
I also find persuasive the federal district court's decision in Hunter v. Durr Systems, Inc., (No. 2:06cv411-WHA, April 24, 2007) (M.D.Ala.2007) (not reported in F.Supp.2d), a case not discussed in the majority opinion. In Hunter, a freelance photographer was taking photographs of a robotic paint booth at the Hyundai Motor Manufacturing plant in Montgomery. The booth contained an elevated walkway with a metal grated floor. On the day the photographer was present, a grate approximately 4 feet by 2 feet was missing from the walkway. During the photo session, the photographer fell through the hole created by the missing grate and sustained injuries. Relying on Williams, the federal district court denied the motion for a summary judgment filed by Durr Systems, Inc., stating:
"Just as the Williams court found that protruding strips on the floor of a grocery store were not definitively open and obvious where the shopper's focus was on the shelves instead of the walkway, this court believes that a jury potentially could find that the missing grate was not open and obvious because Hunter was focused on photographing the robotic arms instead of the walkway."
The federal district court for the Middle District of Alabama addressed a similar issue in Blizzard v. Food Giant Supermarkets, Inc., 196 F.Supp.2d 1202 (M.D.Ala. 2002), a case discussed in the majority opinion. In Blizzard, a grocery store customer tripped over an end-cap pallet, approximately 4 feet by 4 feet by 8 inches in size, at the end of the grocery store aisle. In denying Food Giant's motion for a summary judgment, the federal district court, again relying on Williams, wrote: "The court cannot conclude, however, that there is a legally significant difference in this case between Blizzard's looking at cereal apparently intended by Food Giant to be viewed by customers while she was attempting to buy a particular product, and the plaintiff in Williams who was shopping for products on the shelves." 196 F.Supp.2d at 1208.
Considering the foregoing, and viewing the facts in the light most favorable to Taylor, the nonmovant, I conclude that Taylor presented sufficient evidence for the case to be submitted to the jury for a factual resolution. I firmly believe that the question whether a danger is open and obvious is generally one of fact and that this Court should use restraint in holding, as a matter of law, that something is an open and obvious danger.[7] Taylor entered *748 the Dollar General store to do her shopping. Dolgencorp, as does any other retail store, placed items on its shelves to draw the consumer's attention to those items. Because Taylor was focused on her shopping and was looking for the fabric softener on the shelf instead of focusing on the floor of the shopping aisle, I believe that reasonable persons could differ as to whether the boxes were an open and obvious hazard, and, thus, I believe that the entry of a judgment as a matter of law for Dolgencorp on this issue would be improper. See Brookwood Med. Ctr. v. Lindstrom, 763 So.2d 951, 952 (Ala.2000) ("A judgment as a matter of law `is proper (1) where the nonmoving party has failed to present substantial evidence regarding some element essential to her claim, or (2) where there is no disputed issue of fact upon which reasonable persons could differ.'"). Although the record indicates that Taylor noticed other boxes in the aisles of the store, there is no indication in the record that Taylor saw the specific boxes in the back aisle before she fell over them.
I also dissent from the majority's holding that Taylor's wantonness claim must likewise fail as a matter of law. Statutorily, wantonness is defined as "[c]onduct which is carried on with a reckless or conscious disregard for the rights or safety of others." Ala.Code 1975, § 6-11-20(b)(3). Likewise, "`"[w]antonness" has been defined by the Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. McDougle v. Shaddrix, 534 So.2d 228 (Ala.1988).'" Bozeman v. Central Bank of the South, 646 So.2d 601, 603 (Ala.1994) (quoting Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala.1991)).
The record is replete with evidence indicating that Dolgencorp and its employees knew about the condition of the Dollar General store in Jackson and appreciated the potential consequences of its cluttered aisles. A former employee testified that "our stockroom was full and we had a floor full of boxes that weit was all over the store, full of boxes. All around the store. It was an accident ready to happen." Another former employee testified that the store was "a mess" and "a wreck" on the day Taylor was injured. The former manager of the Jackson store testified that it was against company policy to have boxes in the aisles of the store, that she recognized that having boxes in the aisles was a potential hazard, and that she had complained to her direct supervisor to no avail about the overflowing stockroom that necessitated the storage of merchandise in the aisles. This evidence is substantial enough to warrant a finding that Dolgencorp appreciated the hazardous condition created by the unopened boxes of merchandise in the aisles and that it consciously refused to remedy the situation.
Because I believe substantial evidence was presented to defeat Dolgencorp's motion for a judgment as a matter of law and because substantial evidence was presented of Dolgencorp's inaction, which I believe amounted to evidence of wantonness, I respectfully dissent.
NOTES
[1] Taylor's deposition was read into the record at trial.
[2] The complaint also stated three additional counts that are not at issue in this appeal: Count II alleged that, under the doctrine of respondeat superior, Dolgencorp is liable for Bailey's negligent and/or wanton actions; count III alleged that Dolgencorp negligently and/or wantonly hired, trained, and/or supervised Bailey; and count IV asserted a loss-of-consortium claim against Dolgencorp and Bailey on behalf of Cave.
[3] The trial court also stated that Cave's loss-of-consortium claim was "evaded [sic] by [Cave's] death." The record on appeal reveals that Cave died before trial.
[4] In January 2009, this Court entered an order remanding the case to the trial court, noting that the "claims stated by plaintiff Rena Cave against the defendants, and claims stated by plaintiffs against defendant Linda Bailey, have not been adjudicated ...." Subsequently, the trial court entered an "order of dismissal and final judgment" dismissing with prejudice Cave's loss-of-consortium claim, entering a judgment in favor of Bailey on all claims asserted against her, and entering a judgment in favor of Taylor and against Dolgencorp in the amount of $260,000 ($85,000 compensatory damages and $175,000 punitive damages).
[5] We note that United States district court decisions are not controlling authority in this Court. See Buist v. Time Domain Corp., 926 So.2d 290, 297 (Ala.2005) ("Even considering these cases directly on point, however, they are United States district court cases and can serve only as persuasive authority." (citing Glass v. Birmingham S. R.R., 905 So.2d 789, 794 (Ala.2004))).
[6] See note 5, supra.
[7] I am also troubled by what appears to be a trend of this Court as exemplified by this case and Jones Food Co. v. Shipman, supra, to interject itself into the place of the jury and hold that a danger is open and obvious as a matter of law. This Court should be respectful of the long-standing principle that the question whether a danger is open and obvious is generally one for the trier of fact. See Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1195 (Ala.2002) ("Whether a condition is open and obvious is generally a question for the jury."); F.W. Woolworth Co. v. Bradbury, 273 Ala. 392, 396, 140 So.2d 824, 827 (1962) ("We have long been committed to the proposition that the plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury.").