Rel: February 27, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

_____

### SC-2025-0160
_____

### Jackie Walter

v.

### Branch Hays Farm SC Associates, LP, and Hudson Construction Company

### Appeal from Madison Circuit Court
### (CV-22-900526)

PARKER, Justice.

In May 2021, Jackie Walter tripped and fell outside a Huntsville shopping center while she was walking through a construction zone that had been established in front of a store entrance during a renovation project. Walter sued various entities allegedly responsible for her fall, but before trial the Madison Circuit Court entered summary judgment against her on each of her claims. Because the uneven concrete that allegedly caused Walter's fall was open and obvious as a matter of law, we affirm the circuit court's judgment.

## I.

We are reviewing a summary judgment entered against Walter and in favor of various defendants. In doing so, we briefly recount the most relevant undisputed facts, viewed in the light most favorable to Walter. See Part II, infra.

## A.

One clear, sunny morning in late May 2021, Walter was on the way to her church to help plan an upcoming yard sale when she stopped by a Staples office-supply store. The Staples store was located in what was once known as the Haysland Square Shopping Center in Huntsville. Walter needed to run inside to fax some papers for a neighbor.

2

At the time, the shopping center was undergoing renovations. A grocery store was being built for a new anchor tenant; several smaller retail stores were being added; and the Staples store was getting a new facade, complete with new front sidewalks. As a result, when Walter got out of her car, she had to walk through a construction zone to reach the store's front entrance.

The construction zone featured safety precautions designed to warn and guide prospective Staples customers. As Walter notes in her appellate brief, the construction zone was surrounded by "barricades, barricade tape, traffic cones, and signage." Walter's brief, p. 9. Photographs in the record similarly show the presence of multiple, large, orange-and-white-striped warning barricades, all connected with yellow-and-black caution tape, restricting access to the surrounding sidewalks and channeling customers directly to the front door of the Staples store:





Although it is difficult to discern from the photographs, the sidewalk-closure signs each contained a warning, in all capital letters: "SAFETY FIRST."

Despite those precautions, Walter tripped and fell as she walked through the construction zone. Walter attributes her fall to the concrete having been cut several days earlier as part of the sidewalk-replacement project. This cutting had led to the settlement of some of the concrete. And the settlement, in turn, had left a gap, or an elevation change, between some of the sections of concrete. The gap was very slight, probably between 0.1 and 0.6 of an inch. Recognizing the potential safety risk, the general contractor sprayed orange or yellow fluorescent paint over the affected area:





The contractor sprayed the fluorescent paint shortly after the cutting and well before Walter's arrival at the Staples store on the day in question. There is no evidence in the record of anyone else having issues with uneven concrete at that location in between those times.

## B.

About a year after her fall, Walter sued various entities she believed were responsible for her misfortune -- the shopping-center owner, the general contractor on the renovation project, a subcontractor hired to cut the concrete, and Staples, Inc.[1] Walter's operative complaint asserted claims of "negligence," "recklessness and wantonness," "premises liability," and "respondeat superior," all premised on the defendants' alleged improper handling of the construction zone. She specifically faulted the defendants for, among other things, "[inviting] customers to enter [the Staples store] through the active construction zone," "[failing]

---

[1]Walters later agreed to dismiss the concrete-cutting subcontractor as a defendant. In addition, after the case was on appeal, Walters settled with Office Superstore East, whom she had substituted for Staples, Inc., Of the original defendants, then, only the shopping-center owner (Branch Hays Farm SC Associates, LP) and the general contractor (Hudson Construction Company) remain in the case today.

to provide an alternative entrance," and "[failing] to provide warning, or [providing] insufficient warning of the [relevant] hazards."

After some discovery, the shopping-center owner and general contractor moved for summary judgment. See note 1, supra. They argued that Walter could present only speculation as to the cause of her fall. They also argued that the alleged defect in the premises was "open and obvious."

The circuit court entered summary judgment as requested. In doing so, however, the circuit court did not specify the basis or the reasoning for its judgment. After filing what was ultimately an unsuccessful postjudgment motion, Walter timely noticed her appeal.

## II.

We review a summary judgment de novo, applying the same standard used by the trial court. See Hooper v. Columbus Reg'l Healthcare Sys., Inc., 956 So. 2d 1135, 1139 (Ala. 2006). Under that standard, a trial court must render summary judgment "forthwith" if the evidentiary materials on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ala. R. Civ. P. 56(c)(3).

8

Applying that standard entails shifting burdens. First, a summary-judgment movant must present evidence indicating the absence of any genuine issue of material fact. Then, the burden shifts to the nonmovant to show that a genuine issue of material fact does indeed exist. See Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So. 2d 369, 372 (Ala. 2000). At either step, meeting one's burden requires the production of substantial evidence -- i.e., "'"'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"'" Hooper, 956 So. 2d at 1135 (quoting Potter v. First Real Estate Co., 844 So. 2d 540, 545 (Ala. 2002)). In all events, a court must view the evidence in the light most favorable to the nonmovant. See id.

### III.

Because the circuit court did not explain its reasoning, Walter bears the burden on appeal of overcoming each potential basis the circuit court could have relied on for entering summary judgment against her. See, e.g., Fogarty v. Southworth, 953 So. 2d 1225, 1232 (Ala. 2006). She thus argues, contrary to the defendants' arguments below, that there was a genuine issue of material fact with respect to the cause of her fall. She

also argues that any defect in the concrete outside the Staples store was not an "open and obvious" condition. Finally, she argues that there was sufficient evidence of wantonness to send that claim to a jury. As explained below, we conclude that any defects in the concrete were open and obvious as a matter of law. Because that single conclusion defeats each of her claims, we need not reach Walter's other arguments.

A.

The duty a landowner owes to someone who enters its property varies based on who, exactly, that someone is. See, e.g., Galaxy Cable, Inc. v. Davis, 58 So. 3d 93, 98 (Ala. 2010). For example, the duty a landowner owes to a trespasser is not the same as the duty a landowner owes to a "licensee" (for example, a social guest). See id. And there is yet another, distinct duty a landowner owes to an "invitee" -- that is, a person who enters a premises for some purpose that materially or commercially benefits the owner or occupier of the premises (for example, a customer). See Ex parte Mountain Top Indoor Flea Mkt., Inc., 699 So. 2d 158, 161 (Ala. 1997).

Because the parties agree that Walter was an invitee when she visited the Staples store, the responsible parties owed her a two-pronged

duty of care. First (and ideally), "[t]he owner of premises owes a duty to business invitees to use reasonable care and diligence to keep the premises in a safe condition." Armstrong v. Georgia Marble Co., 575 So. 2d 1051, 1053 (Ala. 1991). Alternatively, "if the premises are in a dangerous condition," the premises owner must "give sufficient warning [to its invitees] so that, by the use of ordinary care, the danger can be avoided." Id.

This duty to "maintain or warn" has its limits, though. A premises owner cannot be liable to an invitee for an injury resulting from an obvious danger -- in other words, a danger that should have been observed in the exercise of reasonable care. See South Alabama Brick Co. v. Carwie, 214 So. 3d 1169, 1176 (Ala. 2016). Instead, the duty to maintain or warn applies only with respect to hidden (or nonobvious) conditions. See Owens v. Ganga Hospitality, LLC, 352 So. 3d 1172, 1175 (Ala. 2021). The key question is whether a given hazard is objectively open and obvious. See Dolgencorp, Inc. v. Taylor, 28 So. 3d 737, 742 (Ala. 2009). "A hazard is open and obvious if it would be apparent to, and recognized by, a reasonable person in the position of the invitee." Owens, 352 So. 3d at 1175.

There is some inconsistency in our caselaw about the proper framework for analyzing this open-and-obvious-hazard limitation. Some decisions have treated it as an outer substantive limit on the duty a landowner owes to invitees, which means an injured invitee must overcome it as a part of his or her case-in-chief.[2] Other decisions have held that "'[an invitor's] argument that the condition that caused [an invitee's] fall was open and obvious is an affirmative defense, on which [the invitor] bears the ultimate burden of proof.'" Byrne v. Fisk, 385 So. 3d 973, 985 (Ala. 2023) (quoting Denmark v. Mercantile Stores Co., 844 So. 2d 1189, 1194 (Ala. 2002)) (emphasis omitted).

Here, though, the parties have treated openness and obviousness as an affirmative defense. As explained next, whether to treat the limitation as an affirmative defense or a substantive limit on the duty makes no difference in this case.

---

[2]See, e.g., Sessions v. Nonnenmann, 842 So. 2d 649, 652 (Ala. 2002) (describing the "openness and obviousness of a hazard" as "negat[ing] the … invitor's duty," which "defeats the [invitee's] injury claim without the operation of any affirmative defense").

B.

Under the undisputed record evidence presented by the defendants, the "uneven concrete" that allegedly caused Walter's fall was objectively open and obvious, thus defeating her claims as a matter of law.

First, because of the general contractor's multiple safety precautions, it is likely that the entire construction zone was an open and obvious hazard. Walter does not dispute that the construction zone in which she fell was surrounded by warning signs, caution tape, and barricades. Nor does she dispute that she had been aware of the construction zone and had personally observed the warning signs, tape, and barricades. Each of those safety features would have warned Walter, or any other person, to be extremely cautious when entering the Staples store.

What is more, the general contractor painted the affected concrete with fluorescent paint soon after the concrete had been cut and specifically for the purpose of making it visible to passersby. Walter did not deny the existence of the paint. Nor did she deny the motivation of the contractor in spraying it there. Her testimony instead was simply that she had not personally noticed it.

13

The problem for Walter here is that the openness-and-obviousness inquiry is objective, not subjective. The relevant question is thus not whether Walter personally perceived the fluorescent warning paint but instead whether it would have been "apparent to, and recognized by, a reasonable person" in her position. Owens, 352 So. 3d at 1175. Even if we were to wholly disregard the other safety precautions surrounding the construction zone, the fact remains: the defendants presented evidence of the fluorescent paint on the affected concrete, and Walter has not provided any evidence to the contrary. Nor, in light of the photographs in the record, has she presented substantial evidence demonstrating that a reasonable person would have missed the warning paint.

This Court's precedents support our decision. For example, in Owens v. Ganga Hospital, LLC, the Court affirmed a summary judgment rejecting a hotel patron's negligence claim arising after the patron fell on a raised platform on hotel property. 352 So. 3d at 1173-74. In Owens, "[p]hotographs in the record depict[ed] the platform at night and indicate[d] that the area [was] brightly lit and that the platform [was] painted red, which clearly contrasts with the surrounding area." 352 So. 3d at 1175. In addition, there was no evidence indicating that any of

14

Owens's family members had been unable to see the platform or had tripped on it. <u>Id.</u> On that record, the Court concluded that the difference in elevation was open and obvious as a matter of law, just as we do here. <u>Owens</u>, 352 So. 3d at 1178.

On the other hand, in <u>McClurg v. Birmingham Realty Co.</u>, 300 So. 3d 1115 (Ala. 2020), this Court reversed a summary judgment rejecting the claims of a shopping-center patron arising out of a fall the patron suffered after stepping into a hole in the parking lot. There, the Court reasoned, a jury could reasonably have rejected the shopping center's open-and-obvious-hazard defense based on such factors as "[t]he position and dimensions of the hole, the fact that the hole was of the same color and material as the surrounding asphalt, and the fact that the hole was unmarked." <u>Id</u>. at 1120.

The facts in the present case are analogous to <u>Owens</u> and distinguishable from <u>McClurg</u>. Photographs in the record show warning signs, caution tape, and barricades in the area in which the fall took place. Moreover, a photograph of the change in elevation shows that the change had been marked with fluorescent orange paint. As in <u>Owens</u>, the photographic record evidence shows that the elevation change (if not

15

"[t]he difference in elevation" itself) was open and obvious to a reasonable prospective Staples customer. <u>Owens</u>, 352 So. 3d at 1175. At the same time, the facts here are dissimilar from the facts in <u>McClurg</u>, where the tripping hazard was not marked and the tripping hazard was in fact the same color as the surrounding asphalt. <u>See</u> <u>McClurg</u>, 300 So. 3d at 1120.

Although Walter cites testimony of two witnesses saying that they could not perceive a tripping hazard from the photographs, that testimony does not address the visibility of the warning paint. That evidence, moreover, does not qualify as "substantial evidence" for purposes of a summary-judgment motion given that photographs in the record, like the ones reprinted above, clearly show the warning paint alerting people to the open and obvious nature of the uneven concrete. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007)); <u>see also</u> <u>Ex parte City of Vestavia Hills</u>, 372 So. 3d 1143, 1147 (Ala. 2022).

In her brief to this Court, Walter relies on <u>Pittman v. Hangout in Gulf Shores, LLC</u>, 293 So. 3d 937, 941 (Ala. Civ. App. 2019). But <u>Pittman</u> does not help Walter and in fact supports the defendants. In <u>Pittman</u>, the Court of Civil Appeals reversed a summary judgment rejecting Pittman's premises-liability claims, holding that a particular elevation change was not open and obvious as a matter of law even though it was marked with yellow paint. But <u>Pittman</u> involved what one expert described as a "'visually complex environment'" that would make it uniquely unlikely for "a patron to be looking where he or she was walking." 293 So. 3d at 941. There was also expert opinion "that the crowded environment and the use of high-top tables in the lower elevation of the premises on the date of the accident" contributed to Pittman's inability to perceive an elevation change. <u>Id.</u> Here, for reasons already explained, "the environment in which a particular hazard appears" cuts entirely against Walter's claims given the numerous safety precautions the general contractor had taken to alert prospective Staples customers to the dangers looming in the construction zone. 293 So. 3d at 943.

17

IV.

On the day of Walter's fall, there were multiple indicators alerting Staples customers to the presence of potential construction hazards generally. There were also specific warnings about the uneven concrete itself. Our premises-liability law requires a premises owner to maintain the safety of its premises or to warn its invitees of any hidden dangers; it did not require Staples to station an employee in the construction zone -- or worse, to shut its doors entirely while construction was underway.

Because we conclude that the uneven concrete that allegedly caused Walter's fall was open and obvious, Walter's negligence and wantonness claims both fail as a matter of law. See, e.g., Dolgencorp, Inc. v. Taylor, 28 So. 3d 737, 745-46 (Ala. 2009). Therefore, the circuit court's judgment is affirmed.

AFFIRMED.

Stewart, C.J., and Wise, Sellers, and Cook, JJ., concur.